IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03267-NYW-STV

DANA ARMBRUSTER, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

GAIA, INC.,
JIRKA RYSAVY; and
PAUL TARELL,

Defendants.

---

**NOTICE OF MOTION AND MOTION OF JOHN L. BELONG FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

---

John L. BeLong ("Movant") respectfully submits this notice of his motion to appoint lead plaintiff and approve lead plaintiff's selection of counsel.

This Motion is brought pursuant to Section 21D of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), on the grounds that: (1) Movant should be appointed as Lead Plaintiff for the class of all purchasers or acquirers of Gaia, Inc. ("Gaia" or the "Company") securities between December 26, 2017 and November 7, 2022, inclusive (the "Class Period"), as Movant has timely made this Motion, has the largest financial interest and otherwise satisfies the pertinent requirements of Federal Rule of Civil Procedure 23; and (2) Movant's selection of The Rosen

1

Law Firm, P.A. as Lead Counsel should be approved as the firm is well-qualified and has extensive experience in cases of this type.

In support of this Motion, Movant submits: (1) the Memorandum of Points and Authorities dated February 21, 2023; (2) the Declaration of Phillip Kim dated February 21, 2023 (and exhibits); and (3) a [Proposed] Order granting Motion of John L. BeLong to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel.

Local Rule 7.1 requires a conference of counsel prior to filing motions. Due to the Private Securities Litigation Reform Act of 1995 lead plaintiff procedure, however, Movant does not yet know which other entities or persons plan to move for appointment as lead plaintiff until after all the movants have filed their respective motions. Under these circumstances, Movant respectfully requests that the conferral requirement of Local Rule 7.1 be waived.

## MEMORANDUM OF POINTS AND AUTHORITIES

John BeLong ("Movant") hereby moves this Honorable Court for an order: (1) appointing Movant as Lead Plaintiff for the Class of all persons and entities other than Defendants that purchased or otherwise acquired Gaia securities between December 26, 2017 and November 7, 2022, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") against the Company, Jirka Rysavy, and Paul Tarell (together "Defendants"); and (2) approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class. This Motion is brought pursuant to the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

Movant should be appointed Lead Plaintiff and his selection of counsel should be approved. To Movant's knowledge, Movant is the "most adequate plaintiff" as defined by the

2

PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Movant purchased 400 shares of Gaia securities suffering losses of approximately $2,306.10 during the Class Period and otherwise satisfies the pertinent requirements of Rule 23 of the Federal Rules of Civil Procedure. Additionally, Movant has selected counsel that has extensive experience in securities class actions throughout the country.

## I.   PERTINENT FACTS AND PROCEDURAL HISTORY

This action was commenced against Defendants for violations of the Exchange Act on December 20, 2022. That same day, the requisite PSLRA early notice advising class members of the pendency of the action and the 60-day deadline for any class member to seek appointment as lead plaintiff in this action was issued. *See* Declaration of Phillip Kim In Support of Motion of John L. BeLong to Appoint Lead Plaintiff and Approve Lead Plaintiff's Selection of Counsel, Ex. 1.[1]

Gaia produces and sells subscriptions to its web-based content, which consists of yoga and meditation, among other topics. Dkt. No. 1 ¶ 2. The complaint alleges that during the Class Period, Defendants made false and/or misleading statements as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's Q1 2019 subscriber count was overstated; (2) the Company lacked adequate internal controls; as a result; (3) Defendants had a heightened risk of regularly scrutiny and ultimately subject to an SEC investigation and action; and (4) as a result of the foregoing, defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a

---

[1] All references to "Ex. __" refer to the exhibits attached to this Declaration.

reasonable basis at all relevant times. *Id*. at ¶ 57.

Then on Sunday, February 14, 2021, Business Insider released an article called "Gaia was a wildly popular yoga brand. Now it's a publicly traded Netflix rival pushing conspiracy theories while employees fear the CEO is invading their dreams," revealing internal and management control weaknesses--particularly the domineering and controlling nature of Rysavy and Tarell and the poor tone at the top within the Company. Business Insider published a follow up article on February 17, 2021, called "Gaia, one of the world's most popular yoga mats, has its roots in a conspiracy site that touts alien secrets and 9/11 theories"—raising further doubts about the legitimacy of management controls within the company. *Id*. at ¶ 41.

These articles caused the price of the Company's stock to fall from $9.82/share on February 12 to $9.62/share on February 17, 2021. *Id*. at ¶ 42.

On November 7, 2022, the Company revealed for the first time an SEC proceeding relating to the Company overstating its subscriber count. The 10-Q states in relevant part:

> "In June 2020, Gaia received a request for voluntary production of documents in an investigation by the staff of the Denver Regional Office (the "Staff") of the U.S. Securities and Exchange Commission (the "SEC"). Since that time, Gaia has responded to the initial voluntary requests and subsequent subpoenas issued by the Staff. In September 2022, Gaia and Gaia's Chief Financial Officer ("CFO") reached an agreement in principle with the Staff on a framework for a complete resolution of the investigation. The agreement in principle contemplates that Gaia would consent, without admitting or denying any findings, to the entry of an administrative order: (1) finding that Gaia (a) misstated in its April 29, 2019

4

earnings release and earnings call the number of paying subscribers for the period ending March 31, 2019, a quarter during which Gaia extended a free month of service to certain subscribers in the midst of a transition to a new enterprise-wide data system and (b) failed to comply with SEC whistleblower protection requirements with respect to the termination of one employee and the language used in severance agreements for other employees; and (2) requiring Gaia to pay a total civil monetary penalty of $2,000[,000] over a one-year period for these violations. At the same time, the CFO would consent, without admitting or denying any findings, to the entry of an administrative order: (1) finding that the CFO caused Gaia's misstatements in the April 29, 2019 earnings release and earnings call that is described above; and (2) requiring the CFO to pay a civil monetary penalty of $50[,000]. The contemplated settlement with Gaia and the CFO involve violations that require only negligence rather than intentional conduct. There can be no assurance that the contemplated settlement will be finalized and approved. Based on Gaia's agreement in principle with the Staff, however, Gaia has accrued a liability in the amount of $2,000[,000]. This liability is included in Accounts payable, accrued and other liabilities on the accompanying condensed consolidated balance sheets and as a separate line in the condensed consolidated statements of operations."

*Id.* at ¶ 58.

Had the Plaintiffs and the Class been aware of the adverse information they would not have purchased the Company's securities at all or would not have purchased such securities at

5

the artificially inflated prices at which they did. *Id*. at ¶ 59.

As a result of Defendants' wrongful acts and omissions, and the decline in the market value of Gaia shares, Plaintiff and other Class members have suffered significant losses and damages.

**ARGUMENT**
**II.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF**

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 60 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice …;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Crocs, Inc. Secs. Litig.*, 2008 WL 4298316, at * 1- * 2 (D. Colo. Sept. 17, 2008).

As explained below, Movant satisfies the above criteria and is the most adequate plaintiff and should be appointed Lead Plaintiff.

**A.    Movant Is Willing to Serve as Class Representative**

6

Preliminarily, in response to the early notice issued on December 20, 2022, Movant made this motion within the 60-day time period. Movant attests that he has reviewed the complaint and is willing to serve as a representative of the class. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class. *See* Ex. 2.

### B.  Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff … is the person … that … has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). While the PSLRA does not specify how to calculate the "largest financial interest," the approximate losses suffered are the most determinative. *Richardson v. TVIA, Inc.*, 2007 WL 1129344 at * 4 (N.D. Cal. Apr. 16, 2008) (citing cases). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness, Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005); *Weiss v. Friedman, Billings, Ramsey, Group, Inc.*, 2006 WL 197036 * 3 (S.D.N.Y. Jan. 25, 2006).

Movant purchased 400 Gaia shares and lost approximately $2,306.10 in connection with his purchases of Gaia common stock during the Class Period. *See* Ex. 3. Movant is not aware of any other individual who has suffered greater losses in Gaia common stock during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed Lead Plaintiff for the Class.

### C.  Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to

possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Federal Rules of Civil Procedure Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification—a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *See In re Fuwei Films Secs. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008) ("At this point, a prospective lead plaintiff need only make a preliminary, prima facie showing that his or her claims satisfy the requirements of Rule 23."); *Cooke v. Equal Energy Ltd.*, 2014 U.S. Dist. LEXIS 63452, *7 (W.D. Okla. May 8, 2014); *Greebel v. FTP Software*, 939 F. Supp. 57, 60, 64 (D. Mass. 1996). Moreover, typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA. *Crocs*, 2008 WL 4298316, at * 2. And of these four prerequisites, only two—typicality and adequacy—affect the analysis of competing motions for appointment as lead plaintiff. *See Wolfe v. Aspenbio Pharma, Inc.*, 275 F.R.D. 625, 628 (D. Colo. 2011).

      **1.**      **Movant's Claims Are Typical of the Claims of All Class Members**

Under Rule 23(a)(3), typicality exists where "the claims … of the representative parties"

are "typical of the claims … of the class." Typicality is demonstrated where the members of the class are victims of the same course of conduct. *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 604 (D. Colo. 1990). Typicality is satisfied when the representative plaintiffs' claims arise from the same event, practice or course of conduct that provides the basis of class claims and are grounded in the same legal or remedial theory. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). Typicality does not require that every class member's claim be identical to those of the representative plaintiffs. *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982). According to the Tenth Circuit, "the typicality requirement is ordinarily not argued … It is to be recognized that there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory." *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1189 (10th Cir. 1975).

Here, the typicality requirement is met because Movant's claims are identical, non-competing and non-conflicting with the claims of the other Class Members. Movant and all of the Class Members purchased Gaia common stock when the prices were artificially inflated as a result of the Defendants' misrepresentations and omissions, and thus, both Movant and Class Members suffered damages as a result of these purchases. Simply put, Movant like all other Class Members: (1) purchased Gaia common stock during the Class Period; (2) purchased Gaia common stock at artificially-inflated prices as a result of Defendants' misrepresentations and omissions; and (3) suffered damages thereby. Moreover, Movant is not subject to any unique or special defenses. Thus, Movant meets the typicality requirement of Rule 23.

### 2. Movant Will Adequately Represent the Class

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and has made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between Movant's claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from his investments in Gaia common stock and is therefore, extremely motivated to pursue claims in this action.

D. **Movant is Presumptively the Most Adequate Plaintiff**

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiff's class" that the presumptively most adequate plaintiff:

> (aa) will not fairly adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Movant has suffered substantial financial losses and has the largest financial interest in this case of any timely lead plaintiff.

The ability of Movant to represent the Class fairly and adequately is discussed above.

Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class. Accordingly, Movant is presumptively the most adequate plaintiff and should be appointed as Lead Plaintiff for the Class.

Further, Movant is a resident of Canada and has about twenty-seven years of investing experience. He holds a Bachelor of Commerce degree and was an accredited financial planner.

## IV.  MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with the Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively researching the Class Plaintiff's claims including reviewing publicly available financial and other documents while gathering information in support of the claims against the defendants. Furthermore, the firm is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in courts throughout the country. *See* Ex. 4. The firm has prosecuted securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## V.  CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movant as Lead Plaintiff; (2) approving Lead Plaintiff's selection of Rosen Law as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: February 21, 2023    Respectfully submitted,

/s/Phillip Kim
Phillip Kim
The Rosen Law Firm, P.A.
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and Class*

**CERTIFICATE OF SERVICE**

I, Phillip Kim, hereby declare under penalty of perjury as follows:

I am an attorney at The Rosen Law Firm, P.A., with offices at 275 Madison Ave, 40th Floor, New York, NY 10016. I am over the age of eighteen.

On February 21, 2023, I electronically filed the following **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF JOHN L. BELONG TO APPOINT LEAD PLAINTIFF AND APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on February 21, 2023.

*/s/ Phillip Kim*
Phillip Kim