**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

*Lead Counsel for Lead Plaintiff and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03267-GPG-STV

DANA ARMBRUSTER, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.


GAIA, INC.,
JIRKA RYSAVY, and
PAUL TARELL,

Defendants.

---

## PLAINTIFFS' REPLY IN SUPPORT OF OPPOSED MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT

---

## INTRODUCTION

Plaintiffs seek leave to amend to include additional facts that were not publicly available when the First Amended Complaint ("FAC") was filed and to respond to purported deficiencies identified in Defendants' motion to dismiss. Dkt. No. 31 at 11.

In opposition, Defendants advance three categories of arguments. First, Defendants argue that the motion to amend is based on undue delay. Dkt. No. 34 at 8. Second, Defendants argue that granting the motion would be unduly prejudicial. *Id*. at 10. Third, Defendants claim the amendments are futile. *Id*. at 11. As discussed below, these arguments are meritless.

## ARGUMENT

### (A). THE LEGAL STANDARD SUPPORTS PLAINTIFFS' MOTION FOR LEAVE TO AMEND.

Fed. R. Civ. P. 15(a)(2) states that parties may amend the pleadings upon leave of court, which should be given "freely" when justice so requires, which Defendants do not acknowledge. *See generally* Dkt. No. 34. Further, Fed. R. Civ. P. 15(b) provides for the filing of an amended pleading *even after* the filing of a motion to dismiss, as in this matter. The liberal standard of granting of motions is guided by "the basic policy that pleadings should enable a claim to be heard on its merits." *Calderon v. Kansas Dep't of Social & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999).

### (B). THERE IS NO UNDUE PREJUDICE TO DEFENDANTS

The "most important factor" in deciding a motion to amend pleadings is "whether the amendment would prejudice the nonmoving party." *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006). Contrary to Defendants' argument, the filing of an

2

amended complaint after a motion to dismiss does not constitute undue prejudice. Indeed, Rule 15(a) contemplates that a party may amend in response to a motion to dismiss. *See e.g.*, *CSMN Investments, LLC v. Cordillera Metropolitan District*, 2018 WL 10582185, at *2 (D. Colo. Mar. 16, 2018) (allowing an amended complaint after the filing of a motion to dismiss even though it would cause some "re-tooling of the arguments in the motion to dismiss")).

Moreover, the May 23, 2023 SEC Order (the "Order") revealed detailed facts which were not available until *after* the filing of the FAC on May 22, 2023. The Order revealed that the Defendants had further misled investors about the extent of Company's anti-whistleblower activities and the full details of the activities alleged by the SEC to be unlawful. *See* Dkt. No. 31-2, at 39-40). Defendants were aware of these new facts and conveniently did not disclose them until *after* the FAC was filed. *See Kennedy v. Corrections Corp. of America,* 2012 WL 1249428 (D. Colo. Apr. 13, 2012) at *2-3 (granting leave to file an amended complaint where plaintiffs alleged newly discovered facts).

Defendants' authorities are easily distinguishable from the facts in this matter. They cite cases where the plaintiff did not seek leave to amend after new information had recently emerged (they simply sat on their hands with *no* additional facts), or are otherwise off the mark. In *Ochoa v. Pacino*, 2023 WL 5241739, at *10 (D. Colo. Mar. 8, 2023), plaintiff sought to amend based on facts known to plaintiff for years. In *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993), plaintiff did not seek leave to amend based on newly discovered information. In *Sheldon v. Golden Ball Retreat*, 2020

3

WL 12675934, at *2 (D. Colo. July 16, 2020), plaintiff sought leave to amend based on information in her possession from an earlier stage in the case. In *Makeen Investment Group, LLC as trustee for Makeen Family Children's Trust v. Colorado*, 825 Fed.Appx. 565, 568 (10th Cir. 2020) and *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.,* 2012 WL 527479, at *6 (D. Colo. Feb. 17, 2012), the respective motions to amend were not based on, as here, the discovery of new facts. In *Hunsaker v. Jimerson*, 2011 WL 3470998 at *1 (D. Colo. Aug. 5, 2011), plaintiff sought to add allegations based on years-old facts, and after multiple motions to amend had already been granted. Further, granting that plaintiff's motion would have delayed the scheduled trial.  *See Id.* at 2.

Cases cited by Defendants to try to show prejudice are similarly off-the-mark. *Wisp Partners, Inc. v. Wisper ISP, LLC*, 2023 WL 4297582 (D. Colo. June 30, 2023), is distinguishable from this case and actually supports Plaintiffs' argument. In that case, the court considered a motion for leave to amend where facts plaintiff sought to add were known at the "time the original and amended complaints were filed." *Id.* at 3. There, the court held that "[u]ndue delay may also occur where a plaintiff was aware of all the information on which the proposed amendment is based *before the filing of an earlier complaint.*" (Emphasis added) *Id.* at *1.

Similarly, in *Pownell v. Credo Petroleum Corp.*, 2011 WL 1656499 at *2 (D. Colo. Feb. 15, 2011), plaintiff sought to add a new claim based on facts he knew at the time he filed the initial complaint. Here, the Order was not available for review until *after* Plaintiffs filed the FAC. The supplemental facts proposed simply add to the calculus and *were known to Defendants before* and only publicly revealed *after* the FAC was due to

4

be and was filed.

Moreover, "leave to amend is to be granted with extreme liberality in securities fraud cases, because the heightened pleading requirements imposed by the PSLRA are so difficult to meet." *Osher v. JNI Corp.*, 183 F. App'x 604, 605, 2006 WL 1307902 at *1 (9th Cir. 2006). In addition, "[i]n this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## (C). THE PROPOSED AMENDMENT IS NOT FUTILE

Plaintiffs' proposed Second Amended Complaint ("SAC") is not futile. The court will only deny amendments as futile when "it appears beyond a doubt that the [party] can prove no set of facts in support of his claims which would entitle him to relief," or when an issue of law is dispositive. *Brawner v. Bank of Am., N.A.*, 2009 WL 10687998, at *2 (D. Kan. Nov. 6, 2009). Further, "denying proposed amendments on the basis of futility requires more than a possibility that certain claims could be dismissed." Id. at *3. In *Jensen v. Redcliff Ascent Inc.*, 2014 WL 2739297, at *7 (D. Utah Jun. 17, 2014), the court declined to deem a proposed amended complaint futile even though it was acknowledged that it might not survive a motion to dismiss.

Defendants argue that the proposed SAC is futile because it purportedly fails to address deficiencies identified in their motion to dismiss. Dkt. No. 34 at 11. In their motion to dismiss, Defendants argued that Plaintiffs failed to sufficiently plead materiality, scienter, or loss causation. *See generally* Dkt. No. 28. In opposing the Motion to Amend, Defendants further argue that the Order is impermissible on

evidentiary grounds. *Id.* at 12.

### (i)    Materiality

In their Motion to Dismiss, Defendants argued that the paid subscriber figure was a non-material metric. *See* Dkt. No. 28, at 9. In their opposition to the Motion to Amend, in response to the proposed SAC, Defendants reiterated "[t]he newly-identified number of re-activated subscribers that were included in the paid subscriber count underscores the lack of materiality for the purported misstatement." *See* Dkt. No. 34, at 5. Defendants also noted that "15,000 of the 562,000 reported subscribers is only 2.67% of total subscribers." Defendants' argument lacks merit.

As a streaming company, paying subscribers are integral to Gaia's business and investors understand this. As Tarell stated on the Company's April 29, 2019 earnings call, in which Gaia reported a false subscriber figure for the quarter (the "1Q19"), "[r]evenues in the first quarter increased 36% to $12.5 million, compared to the year ago quarter ***due to subscriber growth over the same period of approximately 34%.***" (Emphasis added). Dkt. No. 31-2 at 17. As the Company stated in its most recent 10-K, its "revenues are primarily derived from subscription fees for services related to streaming content to our members."  Dkt. No. 31-2 at 6. The Order noted that "[a]s a subscription-based internet streaming company, the number of paying subscribers is a key metric tracked by industry analysts." Dkt. No. 31-3 at 2.

The proposed SAC also alleges that on a report of disappointing subscriber figures for the fourth quarter of 2018, Gaia's stock fell by 15%. Dkt. No. 31-2 at 14. By contrast, the proposed SAC argues that on the news that Gaia had met its target of

paying subscriber figures for the 1Q19 (which it only did by including 15,000 people who had not paid for access), Gaia stock went *up* by 14%. *Id.* at 17. These contrasting market reactions indicate how important paying subscriber figures are to Gaia investors. *See e.g., In re Nature's Sunshine Products Securities Litigation*, 486 F.Supp.2d 1301, 1308 (citing *Oran v. Stafford*, 226 F.3d 275, 282 (3d. Cir. 2000) (Alito, J.)) (the "materiality of disclosed information may be measured post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock") In the proposed SAC, Plaintiffs alleged that the price of Gaia stock declined by 4.1% in response to the full details being disclosed in the Order. Dkt. No. 31-2, at 41. Accordingly, the disclosed information was material.

### (ii)    Scienter

Scienter is defined as a "mental state embracing intent to deceive, manipulate, or defraud." *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1258 (10th Cir. 2001) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). Plaintiffs have met their burden under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007) of pleading an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."

The additional facts provided by the Order strengthen Plaintiffs' claim that Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by showing that Defendants acted with scienter in relation to a material misstatement that was made to the investing public.

In pleading scienter, "[i]ntentional misconduct is easily identified [as evidence of

scienter] since it encompasses deliberate illegal behavior." *Fleming,* 264 F.3d 1245, *supra,* at 1260 (10th Cir. 2001) (citing *Novak v. Kasaks,* 216 F.3d 300, 308 (2d Cir. 2000)). Plaintiffs have pleaded that Defendants reported 15,000 non-paying subscribers as paying subscribers, despite knowledge that those users were not paying for subscriptions. Dkt. No. 31-2, at 14-17. After reporting this false figure, an employee (the "Whistleblower") raised concerns with Gaia senior management about the false paid subscriber figure presented to the public. *Id.* at 18. This Whistleblower was ignored, illegally reprimanded and fired, and ultimately filed a complaint with the SEC, detailing the overstatement of paying subscribers for the 1Q19. *Id.* at 26-27,

The Whistleblower was subsequently fired for case for making "unfounded complaints", including the Whistleblower's correct concern that the number of paying subscribers reported for the 1Q19 was false. *Id.* at 27. In addition, the Company broke the law by including language in employee severance agreements requiring employees to waive their right to receive monetary incentives, which are used by the SEC to encourage reporting of possible securities violations. *See Id.* at 41

Defendants' retaliation against the Whistleblower and general use of wrongful language in severance agreements during the Class Period, so as to disincentivize reporting to the SEC, constitutes a cover-up. "Evidence that a defendant has taken steps to cover-up a misdeed is strong proof of scienter." *In re Nature's Sunshine Products Securities Litigation*, 486 F.Supp.2d 1301, 1310 (D. Utah 2007); *see also In re Galena Biopharma, Inc. Securities Litigation,* 117 F.Supp. 1145, 1166 (D. Ore. 2015) (holding that former CEO's attempts to conceal certain activities supported a strong

inference of scienter and citing cases).

### (iii)    Loss Causation

To plead loss causation, plaintiffs must meet Fed. R. Civ. P. 8(a)(2)'s requirement of a "short and plain statement of the claim showing that the pleader is entitles to relief." *See Dura Pharmaceuticals v. Broudo*, 544 U.S. 336, 337 (2005). Additionally, "it is not Plaintiffs' burden to prove loss causation in their pleadings. ... It is sufficient at this stage [] that Plaintiffs have alleged they have suffered damage and this damage was caused by the misleading statements of the [Defendants]." *In re Accelr8 Technology Corp. Securities Litigation*, 147 F.Supp.2d 1049, 1057 (D. Colo. 2001).

Plaintiffs have met this burden. Preliminarily, Defendants do not argue, and thus concede, the Order revealed new information and provided additional detail about the Company's anti-whistleblower activities and knowledge of the falsity of the 1Q19 subscriber figure. *See* Dkt. No. 34, at 1. The SAC alleges that when the Order was revealed, and these new facts entered the market the price of Gaia stock fell by 4.1%. *See* Dkt. No. 31-2, at 41. This is all that is needed to plead loss causation. *See Arslani v. UMF Group, Inc.*, 2022 WL 79855, at *3 (D. Colo. Jan. 7, 2022).

Defendants argue that the Order did not cause a stock price decline because the Order was purportedly issued after market hours. Defendants cite the relevant SEC page's source code. However, that does not establish that the Order came out *after* the market closed. The code that Defendants cite does not explicitly indicate a time zone. While coding, the standard time zone is Coordinated Universal Time (UTC), which is four hours ahead of Eastern Daylight Time. *See* https://developer.mozilla.org/en-

US/docs/Web/HTML/Date_and_time_formats. After taking this into account, the Order

came out *during* trading hours. In any event, trading takes place after market hours as

well as during market hours, and there was a decline in after-hours trading on May 23,

2023.

### (iv)    Admissibility of the Order

Defendants' argument that the Order may not be used as evidence at this stage

of the litigation is off the mark. First, "[t]here is no absolute rule barring a private plaintiff

from relying on governmental pleadings and proceedings in order to meet the rule 9(b)

and PSLRA thresholds." *Van Leeuwen v. Keyuan Petrochemicals, Inc., et al.*, 2014 WL

3891351 *4 (S.D.N.Y. Aug. 8, 2014) (citing *SEC v. Lee*, 720 F.Supp.2d 305, 340

(S.D.N.Y. 2010)). Moreover, "there is nothing improper about utilizing information

contained in an SEC complaint as evidence to support private claims under the

PSLRA." *Id.* (citing *In re Fannie Mae 2008 Sec. Litig.*, 891 F.Supp.2d 458, 471

(S.D.N.Y. 2012) and quoting *Lee*, 720 F.Supp.2d at 341). Finally, "'[i]t makes little sense

to say that information from … a study [or investigation]—which the [complaint] could

unquestionably rely on if it were mentioned in a news clipping or public testimony-is

immaterial simply because it is conveyed in an unadjudicated complaint'". *Id.* (quoting *In*

*re Bear Stearns Mortgage Pass-Through Certificates Litig.*, 851 F.Supp.2d 746, 767-68

(S.D.N.Y. 2012)).

As such, contrary to Defendants' argument, it is entirely permissible for Plaintiffs

to rely on factual findings from the Order at this stage of the litigation.

### CONCLUSION

10

Plaintiffs reiterate that the circumstances leading to this motion, lack of prejudice to Defendants, precedent, and applicable rules support granting this motion. For these reasons and others stated above, Plaintiffs should be allowed to amend their complaint to incorporate facts from the Order and to alleviate purported deficiencies in the FAC.

Dated:  October 10, 2023                    Respectfully submitted,

*/s/Phillip Kim*
Phillip Kim
The Rosen Law Firm, P.A.
275 Madison Avenue, 40th
Floor New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

*Lead Counsel for Lead Plaintiff and Class*

## CERTIFICATE OF SERVICE

I, Phillip Kim, hereby declare under penalty of perjury as follows:

I am an attorney at The Rosen Law Firm, P.A., with offices at 275 Madison Ave, 40th Floor, New York, NY 10016. I am over the age of eighteen.

On October 10, 2023, I electronically filed the following **PLAINTIFFS' REPLY IN SUPPORT OF OPPOSED MOTION FOR LEAVE TO AMEND THE FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on October 10, 2023.

/s/ Phillip Kim
Phillip Kim