# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03267-GPG-STV

DANA ARMBRUSTER, individually and on
behalf of all others similarly situated,

      Plaintiffs,

v.

GAIA, INC., JIRKA RYSAVY, PAUL TARELL,

      Defendants.

---

## DEFENDANTS' MOTION TO DISMISS

---

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................................................. 1

II.    RELEVANT FACTUAL ALLEGATIONS ....................................................................... 2

III.    LEGAL STANDARD .......................................................................................................... 6

IV.    ARGUMENT ........................................................................................................................ 6

    1.    The Amended Complaint Fails to State a Claim under Section 10(b) of the Securities
and Exchange Act of 1934 (Count I). ....................................................................................... 6

    2.    Plaintiffs Fail to Plead an Actionable False or Misleading Statement or Omission. ....... 7

    3.    Plaintiffs Fail to Adequately Plead a Strong Inference of Scienter............................... 15

    4.    Plaintiffs Fail to Adequately Plead Loss Causation. ..................................................... 19

    5.    The Complaint Fails to State a Claim under Section 20(a) of the Securities and
Exchange Act of 1934 (Count II). .......................................................................................... 22

V.    CONCLUSION ................................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  568 U.S. 455 (2013) ........................................................................................... 7

*Andropolis v. Red Robin Gourmet Burgers, Inc.,*
  505 F. Supp. 2d 662 (D. Colo. 2007) ................................................................ 19

*Arora v. HDFC Bank Ltd.,*
  2023 WL 3179533 (E.D.N.Y. May 1, 2023) ..................................................... 12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................... 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
  493 F.3d 87 (2d Cir. 2007) ............................................................................... 22

*Ave. Capital Mgmt. II, L.P. v. Schaden,*
  131 F.Supp.3d 1118 (D. Colo. 2015) .................................................................. 7

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988) ......................................................................................... 13

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................................... 6, 7

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.,*
  543 F. App'x 72 (2d Cir. 2013) ........................................................................ 20

*City of Philadelphia v. Fleming Co., Inc.,*
  264 F.3d 1245 (10th Cir. 2001) ................................................................... 17, 18

*Cook v. Baca,*
  512 F. App'x 810 (10th Cir. 2013) ................................................................... 22

*Crutchfield v. Match Grp., Inc.,*
  529 F. Supp. 3d 570 (N.D. Tex. 2021) .............................................................. 10

*Dura Pharms., Inc. v. Broudo,*
  544 U.S. 336 (2005) ......................................................................................... 19

*Gross v. AT&T Inc.,*
  2021 WL 9803956 (S.D.N.Y. Sept. 27, 2021) .................................................. 11

*In re Alamosa Holdings, Inc.,*
  382 F. Supp. 2d 832 (N.D. Tex. 2005) .............................................................. 10

*In re AT&T/DirecTV Now Sec. Litig.,*
  2020 WL 4909718 (S.D.N.Y. Aug. 18, 2020) .......................................... 9, 10, 11

*In re Banco Bradesco S.A. Sec. Litig.,*
  277 F. Supp. 3d 600 (S.D.N.Y. 2017) ............................................................... 12

*In re Crocs, Inc. Sec. Litig.,*
  774 F. Supp. 2d 1122 ................................................................................... 12, 14

*In re Gold Res. Corp. Sec. Litig.,*
  776 F.3d 1103 (10th Cir. 2015) ................................................... 15, 16, 17, 18

*In re Gold Res. Corp. Sec. Litig.,*
  957 F. Supp. 2d 1284 (D. Colo. 2013) ......................................................... 7, 19

*In re Level 3 Commc'n, Inc. Sec. Litig.,*
  667 F.3d 1331 (10th Cir. 2012) ........................................................................ 18

4889-2090-0752.2

*In re Lions Gate Ent. Corp. Sec. Litig.*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016) ................................................................. 13, 14
*In re Merck & Co., Inc.*,
  432 F.3d 261 (3d Cir. 2005) ......................................................................... 19
*In re Molycorp, Inc. Sec. Litig.*,
  2015 WL 1514712 (D. Colo. Mar. 30, 2015)..................................................... 19
*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010) ......................................................................... 20
*In re Oppenheimer Rochester Funds Group Sec. Litig.*,
  838 F. Supp. 2d 1148 (D. Colo. 2012) ............................................................ 12
*In re Veritas Software Corp. Sec. Litig.*,
  2003 WL 27386177 (N. D. Cal. 2003)............................................................... 7
*In re Williams Sec. Litig.-WCG Subclass*,
  558 F.3d 1130 (10th Cir. 2009) ..................................................................... 19
*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*,
  45 F.4th 1236 (10th Cir. 2022)................................................................ 9, 13, 15
*Kahnert v. Kotick*,
  2022 WL 2167792 (C.D. Cal. May 20, 2022)..................................................... 13
*Koch v. Koch Indus.*,
  203 F.3d 1202 (10th Cir. 2000) ....................................................................... 7
*Lentell v. Merrill Lynch & Co., Inc.*,
  396 F.3d 161 (2d Cir. 2005) ...................................................................... 19, 20
*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ................................................................. 20, 21
*Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*,
  346 F. Supp. 3d 389 (S.D.N.Y. 2018) .............................................................. 12
*Robbins v. Oklahoma*,
  519 F.3d 1242 (10th Cir. 2008) ....................................................................... 6
*Shero v. City of Grove*,
  *Okla.*, 510 F.3d 1196 (10th Cir. 2007) .............................................................. 6
*Smallen v. The W. Union Co.*,
  950 F.3d 1297 (10th Cir. 2020) ..................................................................... 22
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................................................... 7
*U.S. Olympic Comm. C. Am. Media, Inc.*,
  156 F. Supp. 2d 1200 (D. Colo. 2001) ............................................................... 4

Statutes

15 U.S.C. § 78u-4(b)(1), (2) ........................................................................... 7, 8

Rules

Fed. R. Civ. P. 9(b) ..................................................................................... 15
Fed. R. Civ. P. 12(b)(6)................................................................................... 1

iii

Defendants Gaia, Inc. ("Gaia"), Jirka Rysavy ("Rysavy"), and Paul Tarell ("Tarell," collectively "Defendants"), by and through the undersigned counsel, hereby move the Court for an order dismissing with prejudice Plaintiffs' Second Amended Class Action Complaint ("Complaint") for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and under the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I.    PRELIMINARY STATEMENT

The allegations in the Complaint primarily relate to a single alleged misstatement regarding Gaia's reported number of subscribers for the first quarter of 2019 after Gaia transitioned to a new enterprise-wide billing system. The Complaint simply fails to allege facts establishing that there was a material misstatement. The subscriber count is a non-GAAP, non-financial statement metric that constitutes an estimate without any statutory or industry standard governing its calculation. It was not reported on Gaia's financial statements nor in the company's Forms 10-K or 10-Q. At bottom, there is no basis to suggest a reasonable investor would have cared about a single quarter's alleged misstatement regarding Gaia's subscriber count.

Other alleged misstatements, regarding CEO Rysavy's and CFO Tarell's certifications that Gaia's internal controls over financial reporting and disclosure controls and procedures were effective, are completely contrived. The Complaint alleges these certifications were false for periods both before and after the first quarter of 2019 (the quarter where the subscriber count was allegedly misstated) without *any* factual basis. Simply put, there are no allegations supporting an assertion that the control certifications were false in those periods. As explained further below, the remaining alleged misstatements, including the alleged failure to disclose an SEC investigation or related whistleblower issues, are not actionable.

Moreover, the Complaint wholly fails to allege facts supporting a strong inference of scienter as to any Defendant. Instead, the Complaint relies on purported information the executives

must have known by virtue of their positions as CEO and CFO. This is far from sufficient. The Complaint is devoid of any factual allegations establishing that Gaia, Rysavy, or Tarell had a mental state embracing an intent to deceive, manipulate, or defraud. As a result, it's equally plausible that the subscriber count issue, resulting from Gaia's transition to a new enterprise-wide billing system, was simply a mistake.

Finally, the Complaint allegations completely fail to establish loss causation. This is not surprising. After the single corrective disclosure on November 7, 2022, when Gaia disclosed the existence of the SEC investigation and its pending settlement agreement, the company's stock price actually *increased*. This is fatal to Plaintiffs' claims. Apparently realizing this, the Complaint includes excessive and irrelevant quotes from miscellaneous anonymous opinion articles in an attempt to conjure up some correlation between the alleged misstatements and Gaia's stock price. This is a bridge too far that entirely fails to establish loss causation. For these reasons and for reasons more fully explained below, the Complaint should be dismissed with prejudice.

## II.      RELEVANT FACTUAL ALLEGATIONS[1]

Gaia is a member-supported global video streaming service and community that produces and curates conscious media through four primary channels—Seeking Truth, Transformation, Alternative Healing and Yoga—to its members in 185 countries. (Compl. ¶ 13.) From December 26, 2017 to November 7, 2022 (the "Proposed Class Period"), Gaia's common stock was listed on the NASDAQ Stock Exchange, and Plaintiffs purchased Gaia common stock. (*Id*. at ¶¶ 1, 12.)

**Representations by Gaia.** On a March 4, 2019 earnings call, Rysavy explained that "[h]istorically, we have provided for a 15-day grace period and included all subscribers with card related payment issues in our member count at period end." (*Id*. at ¶ 42.) Rysavy further stated that

---

[1] The factual allegations are taken from Plaintiffs' Complaint and are assumed true for purposes of this Motion only.

2

a new system would make Gaia "better able to determine the rate at which we will resolve these issues at an individual subscriber level and [Gaia] will therefore only include a subset of this group on each balance sheet date going forward." (*Id*.)

On April 29, 2019, Gaia announced its "paying subscriber count increased to 562,000 on March 31, 2019 from 418,200 on March 31, 2018" and a "36% increase in revenues" driven by 34% subscriber growth for the first quarter of 2019. (*Id*. at ¶ 49.) Rysavy and Tarell repeated this information on Gaia's earnings call for the first quarter of 2019. (*Id*. at ¶¶ 54-55.) Tarell noted that the growth numbers excluded subscribers whose payment declined, per the new billing system implemented in the first quarter. (*Id*. at ¶ 55.) Neither Rysavy nor Tarell made any representation about whether the reported numbers included or excluded subscribers in Gaia's $0.99 trial period.

Separately, in the first quarter of 2019, Gaia had extended a free month of service to certain subscribers in the midst of a transition to a new enterprise-wide billing system. (*Id*. at ¶ 47, 131.) Due to that transition and free month offer, Gaia ultimately reached an agreement with the SEC where Gaia would consent to the entry of an administrative order finding that Gaia negligently misstated in its April 29, 2019 earnings release and earnings call the number of paying subscribers for the first quarter of 2019. (*Id*.) Tarell also reached an agreement with the SEC where he would consent to the entry of an administrative order finding that he caused the misstatements at issue. (*Id*.) The administrative order also found that Gaia failed to comply with whistleblower protection requirements. (*Id.*) Importantly, the contemplated settlement with both Gaia and Tarell involved only negligent violations, not intentional conduct. (*Id*.) Gaia disclosed the SEC investigation and related agreement in principle in its November 7, 2022 10Q. (*Id*.) The SEC later reported the settled action with Gaia and Tarell in a May 23, 2023 order, hereafter "SEC Order." (*Id*. at ¶ 133-135.)

On a November 4, 2019 earnings call, Tarell announced: "Effective October 15, 2019, we have returned to a two-week free trial and eliminated the $0.99 charge. … This will not meaningfully impact revenues, but will impact the reported member count for the fourth quarter, as we will not be including trials in the member base going forward." (*Id.* at ¶ 70.) On a February 24, 2020 earnings call, Rysavy restated the elimination of the $0.99 trial and free trial replacement. (*Id.* at ¶ 80.) On that same call, Tarell noted that, because the $0.99 trial was eliminated, Gaia is "no longer including the trial members in reported member count until they convert to paid members." (*Id.* at ¶ 82.)

From November 2017 to August 2022, Gaia filed with the SEC fifteen quarterly reports and five annual reports. (*Id.* at ¶¶ 24, 27, 29, 31, 34, 39, 50, 58, 66, 76, 84, 89, 94, 105, 109, 113, 117, 121, 124, 127.) Each of these reports stated that Gaia's management had conducted an evaluation of the effectiveness of Gaia's internal controls over financial reporting and disclosure controls and procedures and concluded that those controls and procedures were effective. (*Id.* at ¶¶ 25, 28, 30, 32, 35, 40, 59, 59, 67, 77, 85, 90, 95, 106, 110, 114, 118, 122, 125, 128.) For each of these reports, Rysavy and Tarell attested to the truthfulness of the report and the accuracy of Gaia's financial reporting. (*Id.* at ¶¶ 16-17, 24, 27, 29, 31, 34, 39, 50, 58, 66, 76, 84, 89, 94, 105, 109, 113, 117, 121, 124, 127.)

**Publications by Third Parties**. On December 17, 2018, an author under the pseudonym "Wall Street for Main Street" posted an article titled "Gaia: Substantial Downside Remains" on a website called Seeking Alpha, criticizing Gaia's growth estimates and subscriber targets. (*Id.* at ¶ 37; article attached to the Declaration of Kelsey Boehm as Exhibit A.)[2] The author analyzed

---

[2] "When a document is referred to in the complaint and is central to the plaintiff's claim, the court has discretion to consider the document as part of the pleadings." *See, e.g., U.S. Olympic Comm. C. Am. Media, Inc.*, 156 F. Supp. 2d 1200, 1204 (D. Colo. 2001).

publicly available information and noted that the article is merely an expression of his "own opinions." (Boehm Decl. Ex. A at 6.) On this day, Gaia's stock closed $0.45 per share, or 4.1% lower than its opening price. (Compl. ¶ 38.)

On September 23, 2019, an individual named Bret Jensen posted an article titled "Gaia's Inflection Point" on the Seeking Alpha website, speculating that Gaia's growth rate would slow. (*Id*. at ¶ 64; article attached to the Boehm Decl. as Exhibit B.) The author analyzed Gaia's publicly available information, rated Gaia's stock as one to "hold," and noted that the article is merely an expression of his "own opinions." (Boehm Decl. Ex. B at 1, 9.) On this day, Gaia's stock closed $0.54 per share lower than its opening price. (Compl. ¶ 65.)

On December 18, 2019, an author under the pseudonym "Reformer Capital" posted an article titled "Gaia Inc.: Downward Dog – Failed Spin-Offs and Newly Uncovered Information Highlights Potentially Higher Subscriber Churn, 70% Downside" on the Seeking Alpha website. (*Id*. at ¶ 72.) The author analyzed Gaia's public information and posited that "evidence of widespread difficulty in subscribers being able to cancel their account, potentially indicat[es] that subscription figures are inflated." (*Id*.; article attached to the Boehm Decl. as Exhibit C.) In support of this statement, the author attached a file allegedly containing about 70 publicly-available complaints regarding Gaia's billing and cancellation system. (*Id*. at ¶ 74; Ex. C at 8.) The author further noted that he "hope[s] to contribute interesting ideas" and the article is merely an expression of his "own opinions." (Boehm Decl. Ex. C at 18.) On this day, Gaia's stock closed $0.11 per share lower than its opening price. (Compl. ¶ 75.)

On November 18, 2020, an author under the pseudonym "Pacifica Yield" posted an article titled "Gaia: Searching for Inner Alpha" on the Seeking Alpha website, criticizing Gaia's content as "weird" and Gaia's viewers as "exist[ing] in a type of mental upside down." (*Id*. at ¶ 100; article

5

attached to the Boehm Decl. as Exhibit D.) The author assessed Gaia's public information, rated Gaia's stock as one to "hold," and noted that the article is merely an expression of her "own opinions." (Boehm Decl. Ex. D at 6.) On this day, Gaia's stock closed $0.60 per share lower than its opening price. (Compl. ¶ 101.)

On February 14, 2021, Business Insider posted an article titled "Gaia was a wildly popular yoga brand. Now it's a publicly traded Netflix rival pushing conspiracy theories while employees fear the CEO is invading their dreams." (*Id*. at ¶ 102; article attached to the Boehm Decl. as Exhibit E.) On February 17, 2021, Business Insider published a follow up article titled "Gaiam, one of the world's most popular yoga mats, has its roots in a conspiracy site that touts alien secrets and 9/11 theories," citing anonymous sources who described how "panicked workers have speculated that the CEO is using supernatural means to invade their dreams, and that they're being manipulated by crystal energies[.]" (*Id*. at ¶ 103; article attached to the Boehm Decl. as Exhibit F.) On this day, Gaia's stock closed $0.20 per share lower than its opening price. (Compl. ¶ 104.)

## III.    LEGAL STANDARD

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations have no bearing upon the court's consideration. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Indeed, Plaintiffs' burden "requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 546.

## IV.    ARGUMENT

### 1.    The Amended Complaint Fails to State a Claim under Section 10(b) of the Securities and Exchange Act of 1934 (Count I).

6

In order to plead a claim for violations of Section 10(b), a plaintiff must establish "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Ave. Capital Mgmt. II, L.P. v. Schaden*, 131 F.Supp.3d 1118 (D. Colo. 2015) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460-61 (2013)).

Under Rule 9(b) and the PSLRA[3], Plaintiffs must plead "with particularity" "the who, what, when, where, and how" of the purported securities fraud. *See Koch v. Koch Indus.,* 203 F.3d 1202, 1236 (10th Cir. 2000). The PSLRA also requires Plaintiffs to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" and to "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" 15 U.S.C. § 78u– 4(b)(1), (2). To qualify as "strong," the inference of fraudulent intent "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Further, to plead loss causation, the complaint must identify a corrective disclosure and plead "something beyond the mere possibility of loss causation." *Twombly*, 550 U.S. at 557 (citation omitted); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A plaintiff suing under Section 10(b) . . . bears a heavy burden at the pleading stage." *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1291 (D. Colo. 2013). Plaintiffs have failed to meet their burden.

## 2. Plaintiffs Fail to Plead an Actionable False or Misleading Statement or Omission.

---

[3] PSLRA stands for the "Private Securities Litigation Reform Act of 1995." Any class action complaint alleging securities fraud in violation of the Exchange Act is subject to the heightened pleading standards set forth in the PSLRA. *E.g., In re Veritas Software Corp. Sec. Litig.*, 2003 WL 27386177, *4 (N. D. Cal. 2003).

The Complaint must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). Plaintiffs' allegations regarding misleading statements or omissions fall into the following categories: (1) failure to disclose that Gaia's subscriber count for the first quarter of 2019 included certain subscribers who had been offered a free trial period (Compl. ¶¶ 42, 49, 56, 82, 98-99 ); (2) failure to disclose weaknesses in Gaia's internal controls (*id.* ¶¶ 25, 28, 30, 32, 35, 40, 59, 59, 67, 77, 85, 90, 95, 106, 110, 114, 118, 122, 125, 128 ); (3) failure to disclose an SEC investigation and eventual settlement (*id.* ¶ 129); and (4) failure to disclose the timing of Gaia's free trial periods. (*Id.* ¶¶ 70, 80, 99.)

While the specific allegations detailing statements and omissions can be separated into categories (each of which suffer from fatal pleading deficiencies), Plaintiffs' entire fraud claim boils down to the following: Defendants allegedly misstated Gaia's subscriber count in one quarter of one year. In this vein, Plaintiffs' Complaint improperly attempts to stretch securities laws far beyond their limits in their assertion of securities fraud violations for a proposed five-year class period based on misstatement of a non-GAAP, non-financial metric during a single quarter. This Court should reject Plaintiffs' invitation to expand the law to apply under such circumstances and dismiss Plaintiffs' fraud claim based on the pleading deficiencies outlined in this Motion.

> a) ***Plaintiffs' Allegation that Gaia Failed to Disclose That Its Subscriber Count Included Certain Subscribers Who Had Been Offered a Free Trial Period Is Not an Actionable False or Misleading Statement.***

Plaintiffs assert that Defendants committed securities fraud because the subscriber count for a *single* quarter – the first quarter of 2019 – included certain subscribers who had been offered a free trial period. (*id.* ¶¶ 42, 49, 56, 82, 98-99.) Importantly, this is the exact same conduct that was the subject of the SEC's investigation and the SEC concluded the investigation without

charging Gaia with scienter-based fraud, and the settlement involved only negligent violations. (*Id.* at ¶¶ 131-132.) In any event, Plaintiffs fail to sufficiently allege facts in support of this theory of fraud. Instead, Plaintiffs merely allege that Gaia failed to disclose that its subscriber count for the first quarter of 2019 included certain subscribers who had been offered a free trial period. (*Id.* ¶¶ 42, 48-49, 56, 83, 98-99.) The Complaint fails to plausibly allege any non-conclusory facts as to how this is material. Indeed, "[i]t is not enough for a defendant's statement or omission to be false or misleading, it must also be material." *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1248 (10th Cir. 2022) (internal citation omitted). To satisfy the materiality requirement, Plaintiffs must show that "there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* Plaintiffs have not met this burden.

Importantly, the subscriber count is not based on GAAP, it's not a financial metric, nor is it reported in Gaia's financial statements or on Forms 10-K or 10-Q (as demonstrated by the lack of any allegations establishing the same). And there are no allegations establishing that the subscriber count is a metric with any uniform industry standards for calculation. In the absence of any uniform basis in the industry for calculating the number of subscribers, the subscriber count cannot be a material investor consideration. Simply put, a reasonable investor would not be reliant on a subscriber count reported for one quarter. Moreover, without uniform standards, subscriber counts are inherently estimates and cannot be reasonably relied upon absent a disclosure of the methodology used for the calculation. *See, e.g., In re AT&T/DirecTV Now Sec. Litig.,* 2020 WL 4909718 (S.D.N.Y. Aug. 18, 2020) (dismissing fraud claim based on subscription figures when plaintiffs failed to identify legal authority supporting their claim that defendant was required to disclose real time or low engagement rates with subscription counts).

While Plaintiffs' Complaint quantifies the number of non-paying subscribers included in the total count during Q1 2019 (15,000 of 562,000) (Compl. ¶¶ 5, 49), these allegations are insufficient to demonstrate materiality. Plaintiffs conclusively argue that the inclusion of 15,000 non-paying subscribers in the total count "was material to investors" because the price of Gaia's stock went up $1.29 per share, or 14%, the day after the announcement. (*Id.* ¶ 57.) However, an increase in stock price does not demonstrate that the inclusion of the 15,000 subscribers in the count was material. Indeed, Plaintiffs identify a number of other disclosures that were made by Gaia at the same time that could have contributed to the increased stock price, including that (i) it increased its monthly subscription price by 20%, (ii) its revenues increased 36% to $12.5M,[4] and (iii) Gaia's cost to acquire subscribers decreased significantly from 109% to 68%. (*Id.* ¶ 54.) Plaintiffs do not sufficiently explain how the inclusion of 15,000 non-paying subscribers in its 562,000 subscriber count, as opposed to all of this alternative information, "would have, in the eyes of a reasonable investor, significantly altered the total mix of information available." *Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 592 (N.D. Tex. 2021) (holding that plaintiff did not sufficiently explain how omitted facts regarding number of paid subscriptions "would have, in the eyes of a reasonable investor, significantly altered the total mix of information available"); *see also In re Alamosa Holdings, Inc.,* 382 F. Supp. 2d 832, 852 (N.D. Tex. 2005) (improper counting of subscribers was immaterial as a matter of law).

*In re AT&T/DirecTV Now Sec. Litig.* is instructive. Plaintiffs in that case asserted that defendants provided misleading subscriber numbers, which were allegedly driven by rampant fraud committed by AT&T employees nationwide signing up for fake accounts. 2020 WL 4909718, at *11. On that theory, plaintiffs alleged that defendants committed securities fraud

---

[4] Plaintiffs assert that the increased number of subscribers contributed to the increase in revenue. However, the 15,000 non-paying subscribers only make up 10% of the 34% total subscriber increase.

because defendants failed to disclose that some of the accounts were fraudulent. *Id.* Despite accepting Plaintiffs' allegations of fraud as true, the court held that plaintiffs failed to plausibly allege that this was material to reasonable investor's decision to purchase AT&T stock because "Plaintiffs have not plausibly alleged that the fraudulent practices were widespread or systemic." *Id.*[5] Here too, Plaintiffs fail to plausibly allege that the inclusion of 15,000 free trial subscribers (which is only 2.6% of total subscribers) in the subscriber count for Q1 2019 had any widespread impact on Gaia's financial reporting. Conversely, the allegations establish merely an isolated, one quarter occurrence.

**b)      *Plaintiffs Fail to Allege the Purported Misstatements Regarding Internal Controls With Any Particularity.***

Plaintiffs' allegations regarding Gaia's purported weaknesses in internal controls fall far short of satisfying the requisite pleading requirements. Put simply, Plaintiffs assert that because (i) the subscriber count was allegedly overstated during a single quarter (Q1 2019), and (ii) language in Gaia's employee severance agreements required employees to waive rights to receive incentives associated with communicating with the SEC, Defendants somehow committed fraud by representing that Gaia's internal controls over financial reporting and disclosure controls and procedures were effective from Q3 2017 to Q2 2022. *See* Compl. ¶¶ 1, 33,[6] 36, 41, 52-53, 68-69, 91, 96-97, 107-108, 111-112, 115-116, 119-120, 126, 129. In reality, Plaintiffs' Complaint does not allege a single fact as to how Gaia's internal controls were ineffective during Q1 2019 (let alone any of the other quarters identified in the Complaint) or how the Q1 2019 subscriber count issue or severance agreements are even connected to internal control weaknesses. This is fatal.

---

[5] *See also Gross v. AT&T Inc.,* 2021 WL 9803956, at *8 (S.D.N.Y. Sept. 27, 2021) (holding that plaintiffs did not adequately allege that inflated subscriber numbers were material).

[6] Plaintiffs misquote the 2Q18 Report, referring to "June 30, 2019" instead of "June 30, 2018. *See* Compl. ¶ 32. Because the correct date predates the "July 2018" date relating to severance agreements (*id.* at ¶ 33), this allegation does not support Plaintiffs' argument that the June 30, 2018 statement was false based on language included in agreements "starting in July 2018.

11

"Conclusory allegations that a company made false or misleading statements that its controls were effective because a later-revealed instance of impropriety indicates otherwise — absent specific allegations about how or why those controls were ineffective — do not state a claim for securities fraud." *Arora v. HDFC Bank Ltd.*, 2023 WL 3179533, at *6 (E.D.N.Y. May 1, 2023) (collecting cases). Plaintiffs' conclusory Complaint allegations are insufficient because they fail to "describe [defendant's] system of internal controls, let alone identify why that system was inadequate." *Rex & Roberta Ling Living Tr. u/a Dec. 6, 1990 v. B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 405 (S.D.N.Y. 2018) (dismissing fraud claim based on purported misrepresentations regarding internal controls). Importantly, the Complaint does not even allege an internal control weakness, nor that the company disclosed an internal control weakness as a result of the subscriber count issue (because it did not and was not required to).[7]

Moreover, Plaintiffs fail to sufficiently identify anything purportedly false in Gaia's disclosures (*e.g.*, that Gaia's management did not conduct the evaluations described or that it identified but did not disclose weaknesses). Plaintiffs' failure to allege such specifics requires dismissal. *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 648 (S.D.N.Y. 2017) (dismissing complaint that failed to allege that defendant did not conduct the evaluations or failed to disclose weaknesses that it identified); *Arora*, 2023 WL 3179533, at *6 ("Without more specifics, these conclusory allegations about [defendant's] internal controls cannot survive.")

---

[7] Gaia did not disclose any weakness in internal controls over financial reporting or disclosure controls or procedures. *See* Boehm Decl. Ex. G (11/7/2022 Form 10-Q). "In securities cases…a court may take judicial notice of the contents of SEC filings that are a matter of public record." *In re Oppenheimer Rochester Funds Group Sec. Litig.*, 838 F. Supp. 2d 1148, 1156 (D. Colo. 2012); *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1143 n. 3 (D. Colo. 2011) (taking judicial notice of Form 10-K).

Finally, the Complaint does not plausibly allege that the purported misstatements were material and that the alleged control deficiencies would have impacted a reasonable investor's decision making. *Indiana Pub. Ret. Sys.*, 45 F.4th at 1248.

> c) ***Gaia Had No Duty to Disclose the SEC Investigation; This Alleged Omission Is Not Actionable.***

Plaintiffs also assert that Gaia should have disclosed the SEC's investigation earlier than it did. (Compl. ¶¶ 3, 130-131.) However, there was no duty to disclose the investigation any earlier – "[s]ilence, absent a duty to disclose, is not misleading under Rule l0b-5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). "[A] government investigation, without more, does not trigger a generalized duty to disclose." *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) (holding that there is no general obligation to disclose an SEC investigation or even the receipt of a Wells Notice and that these developments were not *per se* material to investors); *Kahnert v. Kotick*, 2022 WL 2167792, at *8 (C.D. Cal. May 20, 2022) (holding that defendant was not required to disclose a pending SEC investigation). "Indeed, absent an express prior disclosure, a corporation has no affirmative duty to speculate or disclose uncharged, unadjudicated wrongdoings or mismanagement, illegal internal policies, or violations of a company's internal codes of conduct and legal policies." *Id.* (internal citation and quotation omitted). The securities laws simply "do not impose an obligation on a company to predict the outcome of investigations." *In re Lions Gate*, 165 F. Supp. 3d at 12. There is good reason for this policy: a company cannot possibly predict what will result from an investigation and incorrect, premature predictions could result in disclosures causing unnecessary market volatility.

As a result, Plaintiffs fail to allege any basis that would impose an affirmative duty on Gaia to disclose the SEC investigation any earlier than it did. Indeed, Plaintiffs do not identify any express prior disclosure (*e.g.,* a statement that Gaia was not undergoing an SEC investigation or

13

some earlier statement about the investigation, *see In re Lions Gate*, 165 F. Supp. 3d at 12-13) that

needed correction. Therefore, Gaia had no duty to speculate or disclose the pending investigation.

### d) Representations Regarding the Timing of Gaia's Free Trial Period Are Not False and Do Not Provide a Basis for a Fraud Claim.

This category of purported fraud is the most perplexing. The representation identified by

Plaintiffs is true, and Plaintiffs' basis for fraud is simply unsupported:

| Statement | Plaintiffs' Asserted Fraud |
|---|---|
| *"Effective October 15, 2019, we have returned to a two-week free trial and eliminated the $0.99 charge. This is consistent with the pricing model from those content subscription services and brings us in line with consumer expectations*. This will not meaningfully impact revenues, but will impact the reported member count for the fourth quarter, as we will not be including trials in the member base going forward." (Compl. ¶ 70) | "On the Company's corresponding 3Q 2019 earnings call, Defendant Tarell announced that the Company was returning to a free trial period. This statement was materially false and misleading because he did not announce that the Company had already returned to a free trial period" (Compl. ¶ 70) |

Plaintiffs' suggestion that Tarell's statement is false "because he did not announce that the

Company had already returned to a free trial period" defies logic. The fact that Gaia had already

returned to a free trial period ("Effective October 15, 2019") *is exactly* what Tarell disclosed on

the 3Q 2019 (November 4, 2019) earnings call. Plaintiffs also assert that this statement is false

because Gaia had previously offered a free trial period in early 2019. *See* Compl. ¶ 71. This still

does not render Tarell's statements false or misleading because he specifically disclosed that the

company "returned to a two-week free trial," explicitly acknowledging that the company

previously had a free trial policy in place and was *returning* to it. (Compl. ¶ 70.) Because Tarell's

statements were true, they are not actionable. *See In re Crocs, Inc. Sec. Litig.,* 774 F. Supp. 2d at

1139 (observing that Rule 10b-5 applies to "untrue statement[s]" and dismissing claims when

statements were not false or misleading).

Even assuming, *arguendo,* that Plaintiffs could demonstrate that the statements are misleading (they are not), Plaintiffs' claim still fails because the purportedly omitted information is not material. As noted in § IV.1.a, to satisfy the materiality requirement, Plaintiffs must show that "there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Indiana Pub. Ret. Sys*, 45 F.4th at 1248.

Under either theory, Plaintiffs cannot demonstrate that Defendants' purported failure to disclose (i) use of free trials earlier in the year, or (ii) that the free trial policy was enacted less than 3-weeks prior to the announcement, is material to investors. In fact, the Complaint allegations demonstrate the opposite: returning to a free trial "will not meaningfully impact revenue." (Compl. ¶ 70; *see also infra* Section IV.1.a.)

### 3.    Plaintiffs Fail to Adequately Plead a Strong Inference of Scienter.

The PSLRA created a heightened pleading standard applicable to the scienter element in a claim under Section 10(b). *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1112 (10th Cir. 2015).

> "With respect to the scienter requirement—a mental state embracing intent to deceive, manipulate, or defraud—it is not sufficient for a plaintiff to allege generally that the defendant acted with scienter, as permitted under Fed. R. Civ. P. 9(b). Rather, the plaintiff must, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meeting that standard …. To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. Furthermore, a complaint will survive only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."

*Id*. (internal citations omitted). Plaintiffs' failure to plead specific facts giving rise to the required strong inference of scienter —by Gaia, Rysavy, or Tarell—is an independent basis for dismissal.

15

Plaintiffs' only allegations in support of the scienter requirement are unsupported conclusory statements. Plaintiffs allege that Defendants acted with scienter because they, somehow, knew that Gaia's public statements were false and misleading simply because Defendants were "privy to confidential information concerning the Company." (Compl. ¶ 152.) Plaintiffs further allege that, because Rysavy and Tarell were senior executives at Gaia, they had actual knowledge of omissions and misstatements and intended to deceive investors. (*Id*. at ¶ 153.) However, at best, Plaintiffs make the following factual allegations:

(1) Gaia's new billing system "had technical issues which created confusion among Gaia's employees … regarding the true number of paying subscribers" (*id*. at ¶ 45);

(2) Gaia misstated its subscriber count for Q1 2019 (*id*. at ¶ 130);

(3) A June 2019 acquisition was a "motive" for the subscriber count misstatement, meant "to prop up the value of [Gaia's] stock" (*id*. at ¶ 63);

(4) In August 2019, a whistleblower raised concerns with Gaia about whether Gaia had overstated the number of paying subscribers in Q1 2019 (*id*. at ¶ 61); and

(5) Defendants, over the course of several years, attested that their evaluations concluded Gaia's internal controls over financial reporting and disclosure controls and procedures were effective. (*Id*. at ¶¶ ¶¶ 25, 28, 30, 32, 35, 40, 59, 59, 67, 77, 85, 90, 95, 106, 110, 114, 118, 122, 125, 128.)

Not one of these allegations establishes a strong inference that Gaia, Rysavy, or Tarrell had a mental state embracing intent to deceive, manipulate, or defraud. The Tenth Circuit has heard arguments similar to Plaintiffs' and rejected them.

In *In re Gold*, an investor plaintiff alleged that the defendant mining company failed to disclose decreased production to investors and inflated production statistics by improperly recognizing sales that were part of an overbilling scheme. 776 F.3d at 1107. The mining company eventually disclosed overbilling when it announced it would have to restate its financial results from the first two quarters of 2012. *Id*. The plaintiff attempted to plead scienter by setting forth eleven factors that he claimed created a strong inference of scienter. *Id*. at 1113. The investor

argued that the accounting misstatements were made by management and management signed attestations in the company's SEC reporting, so surely the executives "must have known" of the misstatements at the time they occurred. *Id*. at 1114. The court disagreed. It held that allegations of accounting irregularities, without additional particularized facts showing fraudulent intent, are insufficient to state a securities fraud claim. *Id*. at 1113. As to the allegations about company directors' attestations, the court held that those were only assertions that the directors were negligent: "it offers no particularized facts to support an inference that defendants knew their sworn SOX statements were false at the time they were made. The bare allegation that defendants lied when they certified [the company's] financial statements pursuant to SOX adds nothing substantial to the scienter calculus." *Id*. at 1116 (internal quotations and citations omitted).

Likewise, Plaintiffs here allege a reporting irregularity—that Gaia inflated its subscriber count by improperly recognizing certain subscribers[8]—but they do not (because they cannot) point to other facts showing the Defendants intended to deceive, manipulate, or defraud investors. In fact, Plaintiffs concede that the new billing system, which led to the subscriber count misstatement, caused "confusion" at Gaia. Confusion is not scienter.

Plaintiffs' allegations related to the June 2019 acquisition fare no better. A shared business motive—like the motive to maintain or increase stock price—cannot by itself sustain a claim for securities fraud. *City of Philadelphia v. Fleming Co., Inc.*, 264 F.3d 1245, 1269 (10th Cir. 2001). "As one court has stated: We do not agree that a company's desire to maintain a high bond or credit rating qualifies as a sufficient motive for fraud in these circumstances, because if scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Id*. (internal

---

[8] Note, this reporting irregularity was well short of an accounting irregularity that required a restatement of financials.

quotations omitted). And Plaintiffs do not allege any facts establishing that Defendants had a personal motive, such as personal financial gain, to make the alleged misstatements at issue. *See e.g.*, *In re Level 3 Commc'n, Inc. Sec. Litig.*, 667 F.3d 1331, 1345-47 (10th Cir. 2012). The lack of any such allegations is telling and amplifies the Plaintiffs' wholesale failure to plead facts supporting scienter against any of the Defendants.

Nor do Plaintiffs' allegations related to the whistleblower establish the required "strong inference" of scienter here. Plaintiffs simply cannot show an intent to deceive when they admit that "Gaia's management inquired into the issue"; Gaia's Audit Committee of the Board of Directors separately looked into the issue; and management and the Board both determined (albeit incorrectly) that the whistleblower was wrong. (Compl. ¶ 61.) If anything, Plaintiffs' allegations show that the company appropriately investigated and responded to the whistleblower's concern.

Plaintiffs also cannot rely on Defendants' attestations to the SEC to plead scienter. Plaintiffs' assertion that Defendants were "privy to confidential information" so they must have known about misleading statements "is simply insufficient under the heightened pleading requirements to establish a strong inference of scienter[.]" *See In re Gold*, 776 F.3d at 1113, 1116 ("Negligence, even gross negligence, is not sufficient; something similar to 'conscious disregard' is required."). "The question is not merely whether [Defendants] had knowledge of the undisclosed facts; rather, it is the *danger of misleading buyers* that must be actually known or so obvious that any reasonable man would be legally bound as knowing." *City of Philadelphia*, 264 F.3d at 1260 (emphasis in original).

Finally, this Court must also consider plausible, nonculpable explanations for Defendants' conduct. *Id*. at 1112. Here, a reasonable person could easily infer from the facts in Plaintiffs' Complaint that Gaia misstated its subscriber count in that single quarter of 2019 ***by mistake***, given

the company's "confusion" in the transition to a new billing system. Because an inference of a mistake by Defendants is more compelling (or at least equally compelling) than any opposing inference one could draw from Plaintiffs alleged facts, their fraud claim must be dismissed.

### 4.    Plaintiffs Fail to Adequately Plead Loss Causation.

Loss causation is a separate, essential element of a Section 10(b) claim that applies at the motion to dismiss stage. *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346 (2005). Securities laws are not meant to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause. *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 676 (D. Colo. 2007) (citing *In re Williams Sec. Litig.- WCG Subclass*, 558 F.3d 1130, 1137 (10th Cir. 2009)). Accordingly, loss causation requires Plaintiffs to identify: (1) a corrective disclosure that revealed improperly hidden information; or (2) materialization of a concealed risk, either of which foreseeably caused the stock price to drop. *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173-74 (2d Cir. 2005).

The only potential corrective disclosures by Gaia alleged in the Complaint appear in paragraphs 43-44 and 131. In paragraph 131, Plaintiffs allege that Gaia's November 7, 2022 Form 10-Q revealed an SEC investigation relating to Gaia's subscriber count in Q1 2019. (Compl. ¶ 131.) This allegation fails to demonstrate loss causation because Gaia's stock price actually *increased* after this disclosure.[9] *In re Merck & Co., Inc.*, 432 F.3d 261, 269 (3d Cir. 2005) (affirming motion to dismiss when there was no negative effect on stock price after disclosure); *GE Invs. V. Gen. Elec. Co.*, 447 F. Supp'x 229, 232 (2d Cir. 2011) (plaintiffs failed to plead loss

---

[9] *See* https://www.nasdaq.com/market-activity/stocks/gaia/historical (relevant excerpt at Boehm Decl. ¶ 9). "Because stock price data is capable of ready and accurate determination, judicial notice is appropriate*." In re Molycorp, Inc. Sec. Litig.*, 2015 WL 1514712, at *2 (D. Colo. Mar. 30, 2015) (citing FRE 201(b)(2) and taking judicial notice of exhibit consisting of published stock price data); *see also In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d at 1293.

causation when the stock price increased after disclosure of the risk allegedly concealed). Plaintiffs' allegations in 43-44 allege that there was a decline in stock prices following Gaia's disclosure of missed expectations on a March 4, 2019 earnings call. (Compl. ¶¶ 43-44.) However, Gaia's accurate disclosure of missed revenue projections does not demonstrate loss causation because Plaintiffs do not allege that the missed projections were a corrective disclosure of improperly hidden information or materialization of a concealed risk. *Lentell,* 396 F.3d at 173-74.

Beyond that, Plaintiffs merely identify five (5) instances of stock price decline following third-party "articles" reflecting the authors' opinions based on already-public information and the SEC's Order, which discloses the same investigation and settlement reflected in Gaia's November 7, 2022 Form 10-Q. *See* Compl. ¶¶ 37-38; 64-65; 72-75; 100-101; 102-104; 134-138; *see also* Boehm Decl. Exs. A-F. However, with respect to the former, this type of third-party opinion is insufficient for purposes of demonstrating loss causation. *Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013) (holding that third-party analyst's opinion does not qualify as disclosure for loss causation). The basis for the *Meyer* court's holding is instructive:

> If every analyst or short-seller's opinion based on already-public information could form the basis for a corrective disclosure, then every investor who suffers a loss in the financial markets could sue under § 10(b) using an analyst's negative analysis of public filings as a corrective disclosure. That cannot be—nor is it—the law.

*Id.*; *see also Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.,* 543 F. App'x 72, 75 (2d Cir. 2013) (holding that "third-party articles and reports express[ing] negative *opinions*" about defendant "are not 'corrective' for the purpose of pleading loss causation") (internal citation omitted); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) ("A negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions.")

What's more, Plaintiffs do not sufficiently tie Gaia's stock price movement to the published articles in question. Nor can they. The articles were based on the interpretation of public information which presumably is already baked into the stock price given the efficient market hypothesis upon which Plaintiffs rely.[10] Any attempted inference that Gaia's stock price moved as a result of the referenced articles is entirely speculative and unsupported by any alleged facts.

In addition, many of the authors' opinions have absolutely no connection to the misrepresentations and omissions providing the basis for Plaintiffs' claims. For example, the Business Insider article Plaintiffs quote refers to speculation that "the CEO is using supernatural means to invade [] dreams" and "manipulate[s] by crystal energies[.]" (Compl. ¶ 103.) Yet, Plaintiffs do not allege that Gaia improperly withheld information regarding its CEO's purported supernatural powers and crystal energies. Accordingly, any purported loss caused by this disclosure is not corrective and has no connection to Plaintiffs' claims to plausibly allege loss causation.

Finally, the May 23, 2023 SEC Order does not qualify as a corrective disclosure as it was issued by the SEC and not "made" by Gaia. The Order merely describes the same information regarding the SEC's investigation and settlement with Defendants Gaia and Tarrell as Gaia's November 7, 2022 10Q disclosure as described above. Following Gaia's November 7, 2022 disclosure of this information, the stock price actually increased. Thus, the May 23, 2023 SEC

---

[10] Plaintiffs state that they are relying in part upon the presumption of reliance established by the fraud-on-the-market doctrine (Compl. ¶¶ 92-93), which derives from the efficient market hypothesis. This hypothesis provides essentially that a company's stock price reflects all publicly available information in an open and developed securities market. *See e.g.*, *Meyer*, 710 F.3d at 1195 (fraud-on-the-market theory was fatal to ability to demonstrate loss causation).

Order cannot constitute a corrective disclosure since the impact (or lack thereof) related to Gaia's

disclosure of the SEC action had already been absorbed by the stock market.

     **5.**     **The Complaint Fails to State a Claim under Section 20(a) of the Securities and Exchange Act of 1934 (Count II).**

     "To establish a prima facie case of control person liability, a plaintiff must show (1) a

primary violation by the controlled person, (2) control of the primary violation by the defendant,

and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled

person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 at 108 (2d Cir. 2007). The

Complaint fails to establish a prima facie case of control person liability because, as explained

above, it fails to plausibly allege any primary securities violation. *Smallen v. The W. Union Co.*,

950 F.3d 1297, 1315 (10th Cir. 2020) (Section 20(a) claims necessarily failed because such claims

are "predicated on some underlying primary violation of the securities law" and plaintiff failed to

allege a primary violation); *Sorkin, LLC v. Fischer Imaging Corp.*, 2005 WL 1459735, at *12 (D.

Colo. June 21, 2005) ("Because the amended complaint fails to state a claim under § 10(b) of the

Exchange Act for securities fraud against the defendants, the allegations of control person liability

also fail.") In addition, the Complaint fails to plead with particularity any facts demonstrating the

required conscious misbehavior or culpable participation by Messrs. Rysavy and Tarell in the

alleged fraud. These defects require dismissal of Count II.

**V.**     **CONCLUSION**

     For the reasons stated above, Defendants respectfully request that the Court enter an Order

dismissing Plaintiffs' Complaint with prejudice.[11]

---

[11] Plaintiffs initiated this case in December 2022 and have since had the opportunity to amend their complaint on two separate occasions. Despite amendment, including 50+ paragraphs of additional allegations, Plaintiffs still fail to plausibly allege facts a securities fraud claim. Under these circumstances, dismissal should be with prejudice and without opportunity to amend further. *See, e.g., Cook v. Baca*, 512 F. App'x 810, 823 (10th Cir. 2013) (affirming district court's dismissal with prejudice and without leave to amend when second amended complaint would be futile).

DATED this 20th day of November, 2023.

Respectfully submitted,

/s/ Thomas Krysa
Thomas Krysa
Kelsey C. Boehm
Stephanie Adamo
Foley & Lardner LLP
1400 16th Street, Suite 200
Denver, Colorado 80202
Phone: 720.437.2013
Fax: 720.437.2200
tkrysa@foley.com
kboehm@foley.com
sadamo@foley.com

23

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of November, 2023 I electronically filed the foregoing

**DEFENDANTS' MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system

which will send notification of such filing to counsel of record for all parties.

*s/ Heather Kunkel*

1