IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03267-GPG-STV

DANA ARMBRUSTER, individually and on
behalf of all others similarly situated,

    Plaintiffs,

v.

GAIA, INC., JIRKA RYSAVY, PAUL TARELL,

    Defendants.

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONT`ENTS

I.   PRELIMINARY STATEMENT ................................................................................................ 1

II.  ARGUMENT ........................................................................................................................... 1

   A.   The Complaint Fails to State a Claim under Section 10(b) of the Securities and Exchange Act of 1934 (Count I). ........................................................................................................... 1

     1.   Plaintiffs Fail to Adequately Plead a Strong Inference of Scienter. .................................... 1

        a)   Plaintiffs Scienter Allegations with Respect to the Individual Defendants Are Sparse and Insufficient. ........................................................................................................................5

     2.   Plaintiffs Fail to Plead an Actionable False or Misleading Statement or Omission. ........... 7

        a)   Plaintiffs Fail to Allege the Purported Misstatements Regarding Internal Controls with Any Particularity. ...........................................................................................................7

        b)   Plaintiffs' Allegation that Gaia Failed to Disclose That Its Subscriber Count Included Certain Subscribers Who Had Been Offered a Free Trial Period Is Not a Material False or Misleading Statement. ...................................................................................................9

        c)   Plaintiffs Fail to Address Gaia's Remaining Arguments. ......................................................10

     3.   Plaintiffs Fail to Adequately Plead Loss Causation. ........................................................... 11

III. CONCLUSION...................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Andropolis v. Red Robin Gourmet Burgers, Inc.,* 505 F. Supp. 2d 662 (D. Colo. 2007) ............... 3

*Arora v. HDFC Bank Ltd.*, 2023 WL 3179533, at *6 (E.D.N.Y. May 1, 2023) ............................ 9

*AT&T/DirecTV Now Sec. Litig.*, 2020 WL 4909718, at *11 (S.D.N.Y. Aug. 18, 2020) .............. 10

*Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570 (N.D. Tex. 2021) ................................. 9, 10

*Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435 (S.D.N.Y. 2007) ...................... 4

*Golesorkhi v. Green Mountain Coffee Roasters, Inc.*, 973 F. Supp. 2d 541 (D. Vt. 2013) ............ 2

*In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832 (N.D. Tex. 2005) ........................................... 9

*In re AT&T/DirecTV Now Sec. Litig.*, 2020 WL 4909718, at *11
   (S.D.N.Y. Aug. 18, 2020) ......................................................................................................... 10

*In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331 (10th Cir. 2012) .................................... 4

*In re Level 3 Commc'ns, Inc. Sec. Litigation*, 2010 WL 5129524, at *11
   (D. Colo. Dec. 10, 2010) ............................................................................................................ 2

*In re Nature's Sunshine Prod. Sec. Litig.*, 486 F. Supp. 2d 1301 (D. Utah 2007) .......................... 4

*In re Verifone Holdings, Inc. Sec. Litig.*, 704 F.3d 694 (9th Cir. 2012) ........................................ 4

*Indiana Public Retirement System v. Pluralsight*, 45 F.4th 1236 (10th Cir. 2022) ..................... 10

*McNamara v. Pre-Paid Legal Servs., Inc.*, 189 F. App'x 702 (10th Cir. 2006) .......................... 12

*S.E.C. v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708 (D.N.J. 2005) .................................................. 3

*Torrez v. Edwards*, 107 P.3d 1110 (Colo. App. 2004) ................................................................. 12

*Turner Ins. Agency, Inc. v. Farmland Partners Inc.*, 2019 WL 2521834, at *2
   (D. Colo. June 18, 2019) .......................................................................................................... 11

*Weinstein v. McClendon*, 757 F.3d 1110 (10th Cir. 2014) ............................................................ 9

Statutes

15 U.S.C. § 78u-4(b)(1)(B) ............................................................................................................. 7

Rules

17 C.F.R. § 240.13a-15(e) .............................................................................................................. 7
17 C.F.R. § 240.13a-15(f) ............................................................................................................... 7

I.     **PRELIMINARY STATEMENT**

Plaintiffs' Opposition (Dkt. 46) falls far short of rebutting the well-supported arguments for dismissal in Defendants' motion to dismiss. (Dkt. 45.) Plaintiffs rely on inapposite case law and otherwise offer little more than a restatement of the conclusory and insufficient allegations of their Second Amended Class Action Complaint ("Complaint"). Plaintiffs' case boils down to a one quarter mistake related to Gaia's subscriber count. As explained further below, the false SOX certification allegations are contrived and based on faulty premises. Additionally, the allegations regarding the subscriber count issue and defective severance agreements fall short of establishing securities fraud claims against Gaia and the individual defendants. For these reasons and for reasons stated below, Defendants' motion to dismiss should be granted accordingly.

II.     **ARGUMENT**

    A.     **The Complaint Fails to State a Claim under Section 10(b) of the Securities and Exchange Act of 1934 (Count I).**

        1.     **Plaintiffs Fail to Adequately Plead a Strong Inference of Scienter.**

In response to this argument, Plaintiffs cobble together alleged "facts" that they urge the Court to consider "holistically" to demonstrate a strong inference of scienter. Yet, review of those "facts," even on a holistic basis, shows that Plaintiffs fail to satisfy the PSLRA's heavy burden.

Plaintiffs attempt to argue that because Defendant *Tarell* knew about the loss of 20,000 subscribers and formulated a plan to gift them a free month the "*Defendants* knew that they had falsely reported that Gaia had 562,000 subscribers for 1Q19[.]" (Dkt. 46 at 11-12.)[1] But knowledge regarding a loss of subscribers and a plan to regain them simply does not demonstrate that Defendants *knew* when they reported the 1Q19 subscriber count on April 29, 2019 (Compl. ¶¶ 45,

---

[1] Plaintiffs argue the "Court may infer defendant Rysavy approved Tarell's plan because it is not plausible that Tarell's subordinates would have the authority to approve such a plan." (*Id*. at 12.) This new, still conclusory, argument is not alleged in the Complaint and should be rejected.

1

54) that they falsely included 15,000 unpaid subscribers. Indeed, Plaintiffs affirmatively allege that Defendants "relied on billing software to generate data on reported paying subscribers[.]" (Compl. ¶ 45.) Plaintiffs assert that in 1Q19 Gaia transitioned to a New Billing System that "had technical issues which created confusion among Gaia employees…regarding the true number of paying subscribers." (*Id.* ¶ 45.) The transition to this new system does not give rise to a strong inference that Defendants acted with an *intent to defraud* investors regarding the number of subscribers. Instead, these allegations support a strong inference that Gaia misstated its subscriber count in a single quarter *by mistake* given the confusion associated with the transition. *In re Level 3 Commc'ns, Inc. Sec. Litigation*, 2010 WL 5129524, at *11 (D. Colo. Dec. 10, 2010) (mistakes "fall well short of supporting a strong inference of scienter"). Plaintiffs fail to identify any specific information or reports indicating that Defendants knew the system's subscriber count was inaccurate. *Golesorkhi v. Green Mountain Coffee Roasters, Inc.*, 973 F. Supp. 2d 541, 555 (D. Vt. 2013) (failure to allege scienter where plaintiffs made generalized assertions that defendants "must have known" demand system was inaccurate "without identifying specific reports that would have indicated that to be the case."). Plaintiffs also minimize the key fact that the subscriber count was incorrect for *only one quarter* during the entire class period – there is no pattern of conduct here.

Moreover, Plaintiffs' whistleblower allegations fail to demonstrate scienter for the subscriber count issue. Specifically, Plaintiffs allege that "*starting* in August 2019, a whistleblower…began to raise concerns…on the issue of *whether* Gaia had overstated the number of paying subscribers for the first quarter of 2019." (*Id.* ¶ 61 (emphasis added).) A whistleblower raising the potential issue after-the-fact adds nothing to the argument that Defendants misstated the subscriber count with intent to defraud five months earlier. Indeed, Plaintiffs cannot show an intent to deceive when they admit "Gaia's management inquired into the issue"; Gaia's Audit

2

Committee of the Board of Directors separately looked into the issue; and the Board agreed with management's assessment of the situation (*Id.*) These allegations counter any inference that the company was trying to keep the issue from view. *See, e.g., Andropolis v. Red Robin Gourmet Burgers, Inc.,* 505 F. Supp. 2d 662, 679 (D. Colo. 2007) (fact that defendant hired a consultant to examine the "expensing systems counters an inference that the Company was trying to keep the alleged accounting problems from view") (internal citation and quotation omitted).

Plaintiffs attempt to argue that purported efforts to cover up misconduct support an inference of scienter. (Dkt. 46 at 13.) But the primary allegation identified in support of this argument is language contained in Gaia employee severance agreements that *pre-date* the alleged misconduct. (Compl. ¶¶ 33, 36, 41, 53, 60, 68, 78, 86, 91, 96, 107, 111, 115 ("starting in July 2018, Gaia…included language in employee severance agreements…")). This is hardly a cover up, and the cases cited by Plaintiffs are inapposite. For example, in *S.E.C. v. Lucent Techs., Inc.*, the defendant authorized an agreement with AWS and then later signed two letters to the chief accountant suggesting there was no agreement with AWS. 363 F. Supp. 2d 708, 716 (D.N.J. 2005). The AWS agreement resulted in improper revenue recognition because defendant misled the accountant as to the existence of the agreement. *Id.* Here, there are no allegations regarding Defendants' purported knowledge of the subscriber count issue and later attempts to cover it up through language in a severance agreement. Rather, the employee severance agreement included the same language that was used long before the subscriber count issue arose for 1Q19, and Defendants inquired into the issue after it was raised by the whistleblower. In *In re Nature's Sunshine Prod. Sec. Litig.*, the court found that plaintiffs set forth allegations regarding scienter based, in part, on a cover up due to the defendants' failure to take remedial actions requested by its independent auditor to remedy the effects of the alleged fraud. 486 F. Supp. 2d 1301, 1311 (D.

Utah 2007). In the instant case, Gaia's management, Board, and Audit Committee did look into the whistleblower's concerns. (Compl. ¶ 61.) Thus, *In re Nature's Sunshine* does not apply.

Plaintiffs also argue that motive to commit fraud demonstrates scienter. (Dkt. 46 at 14.) However, as noted in Defendants' opening brief, a shared business motive—like the motive to maintain or increase stock price alone—cannot sustain a claim for securities fraud. (Dkt. 45 at 17 (internal citations omitted). The cases cited by Plaintiffs are distinguishable. Unlike *In re Verifone Holdings, Inc. Sec. Litig.*, Plaintiffs have not alleged that Defendants met projections by directing "baseless multimillion dollar adjustments" to the company's financial statements or "encouraged employees to engage in 'aggressive' accounting to ensure" the company met targets. 704 F.3d 694, 698, 710 (9th Cir. 2012). Instead, the allegations here suggest nothing more than a one quarter miscount due to technical issues with the billing system.[2] In *Glidepath Holding B.V. v. Spherion Corp.*, the plaintiffs alleged ten different financial reasons that motivated defendant to commit fraud, including the desire to induce a party into a sale and avoid nearly 7M in liabilities. 590 F. Supp. 2d 435, 455 (S.D.N.Y. 2007). Here, the only purported motivation offered by Plaintiffs is to meet a previously projected subscriber count. But Plaintiffs do not allege any facts establishing that Defendants had specific personal motive, such as financial gain resulting from meeting the subscriber projections, to make the alleged misstatements at issue. *See In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1347 (10th Cir. 2012).

Finally, Plaintiffs rely on additional after-the-fact and unconnected events in a desperate attempt to plead scienter. Specifically, Plaintiffs argue that Tarell and Rysavy left the company shortly after the SEC Order was released "because it became untenable for them to remain in those

---

[2] Plaintiffs' argument that the misstated subscriber count during one quarter allowed Gaia to purchase a company using stock at an inflated price defies credibility. Ironically, if true, this arrangement would have been a benefit to Gaia's shareholders, not a detriment.

4

roles once their wrongful behavior had been revealed." (Dkt. 46 at 15.) These facts are not alleged in the Complaint and should be rejected. As an initial matter, Defendant Rysavy is still with the company as Executive Chairman of the Board. Further, Tarell's negligent "behavior" with respect to the SEC investigation was revealed long before the SEC Order and Tarell's voluntary separation from the company. (*See* allegations regarding Gaia's 11/7/2022 Form 10Q, Compl. ¶ 131.) Accordingly, Plaintiffs' arguments on this point are entirely misplaced.

         *a)*     ***Plaintiffs Scienter Allegations with Respect to the Individual Defendants Are Sparse and Insufficient.***

The sparse allegations specific to Defendants Rysavy and Tarell make clear that Plaintiffs fail to adequately plead a strong inference of scienter against each individual. Failure to allege scienter against the individual defendants results in failure to allege scienter with respect to Gaia "under *respondeat superior* and agency principles." (Compl. ¶ 21.) With respect to Rysavy, Plaintiffs' allegations include the following: **(i)** Rysavy founded Gaia and was CEO and Chairman at all relevant times. (*id.* ¶¶ 14, 16); **(ii)** Rysavy signed SOX certifications (*id.* ¶ 24, 27, 29, 31, 34, 39, 50, 58, 66, 76, 84, 89, 94, 105, 109, 113, 117, 121, 124, 127); **(iii)** Rysavy disclosed that Gaia's subscriber count included those with payment issues as subscribers but did not disclose that Gaia would include those accessing Gaia content for free (*id.* ¶ 42); **(iv)** Rysavy stated that Gaia finished 1Q19 with 562,000 subscribers (*id.* ¶ 54); **(v)** Rysavy stated that Gaia reinstated a period of free subscription service in 4Q19 (*id.* ¶ 80); and **(vi)** a February 2021 article described Rysavy as "domineering and controlling" with "poor tone." (*Id.* ¶ 102).

The Complaint does not allege particular and plausible factual allegations that Defendant Rysavy intended to deceive investors or acted recklessly towards them. The Complaint fails to allege that Rysavy knew or was reckless in not knowing that (i) the 1Q19 subscriber count reported was incorrect, or (ii) that there was any inaccuracy in the SOX certifications signed. Simply put,

5

no allegations establish Rysavy's knowledge or involvement with respect to the subscriber count issue or alleged internal control weaknesses. Plaintiffs' claims against him should be dismissed.

With respect to Defendant Tarell, Plaintiffs allege that: **(i)** Tarell generally oversaw and tracked subscriber figures (*id.* ¶¶ 4, 45); **(ii)** Tarell was CFO until he resigned effective June 26, 2023 (*id.* ¶ 17); **(iii)** Tarell signed SOX certifications (*id.* ¶ 24, 27, 29, 31, 34, 39, 50, 58, 66, 76, 84, 89, 94, 105, 109, 113, 117, 121, 124, 127);**(iv)** Tarell stated Gaia "expect[s] to report around 560,000 subscribers for Q1." (*id.* ¶ 43); **(v)** Gaia's 1Q19 transition to the New Billing System "created confusion among Gaia's employees, including Tarell" (*id.* ¶ 45); **(vi)** Tarell suggested that Gaia give a free month of access to subscribers that were lost in the transition to the New Billing System (*id.* ¶¶ 46-47); **(vii)** Tarell stated that Gaia finished 1Q19 with 562,000 paying subscribers (*id.* ¶ 55); **(viii)** Tarell announced that Gaia was returning to a free trial period in a 3Q19 earnings call but did not announce that earlier in the year Gaia had returned to a free trial period as a result of the issues with the New Billing System (*id.* ¶¶ 70-71); **(ix)** Tarell stated in a February 2020 earnings call that because Gaia eliminated the $.99 introductory period, Gaia was no longer including trial members as paid members (*id.* ¶ 82); **(x)** Tarell responded to an analyst question stating that the biggest shift for upholding subscriber retention was putting the trial period on both the monthly and annual plan in 4Q19 (*id.* ¶¶ 98-99); and **(xi)** a February 2021 article described Tarell as "domineering and controlling" with "poor tone." (*Id*. ¶ 102).

Again, the Complaint is devoid of particular and plausible allegations that Tarell intended to deceive investors or acted recklessly towards them. No allegations establish that Tarell knew or was reckless in not knowing that (i) the 1Q19 subscriber count reported was incorrect, or (ii) that there was any inaccuracy in the SOX certifications signed. At most, the allegations establish Tarell relied on software to generate data on paying subscribers and that the software had technical issues

"which created confusion among Gaia's employees, including Tarell…regarding the true number of paying subscribers." (*Id.* ¶ 45.) These allegations do not demonstrate Tarell acted with intent to deceive, manipulate, or defraud. At best, they amount to nothing more than negligence (consistent with the SEC's finding). For these reasons, Plaintiffs' Complaint fails to allege a strong inference of scienter with respect to Tarell and Rysavy, and in turn, Gaia. The claims should be dismissed.

### 2. Plaintiffs Fail to Plead an Actionable False or Misleading Statement or Omission.

Plaintiffs fail to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). Plaintiffs double down on their internal control and 1Q19 subscriber count theories, but still fail to allege with particularity how and why the statements were misleading.

#### a) Plaintiffs Fail to Allege the Purported Misstatements Regarding Internal Controls with Any Particularity.

Plaintiffs SOX certification arguments and allegations are confusing and contradictory. They oscillate between referencing disclosure controls and procedures on the one hand (*see* Compl. ¶¶ 25, 28, 30, 32, 35, 40, 51, 59, 67, 77, 85, 90, 95, 106, 110, 114, 118, 122, 125, 128 ), and internal control over financial reporting, or internal controls, on the other. *See* Dkt. p. 9, n 2. These two control concepts are distinct.[3] The single quarter subscriber count issue cannot constitute a misstatement regarding Gaia's internal control over financial reporting because the subscriber count was not reported on Gaia's financial statements and it is not a GAAP metric. Apparently realizing this, Plaintiffs' Complaint repeatedly references purported misstatements

---

[3] Disclosure controls and procedures refer to controls and procedures designed to ensure that information required to be disclosed by an issuer in its periodic reports is accumulated and communicated to the issuer's management. *See* 17 C.F.R. § 240.13a-15(e). Internal controls over financial reporting refer to controls or processes that provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. *See* 17 C.F.R. § 240.13a-15(f).

regarding Gaia's disclosure controls and procedures. However, Plaintiffs' allegations and arguments fail to connect the dots between Gaia's subscriber count issue and severance agreements to Gaia's disclosure controls and procedures. First, as discussed above, the subscriber count mistake occurred in one quarter and resulted from Gaia's transition to a new billing software. This is not a weakness in disclosure controls and procedures. In fact, the software issue was known to management at the time that it occurred, and thus, no control deficiency existed. Moreover, the subscriber count issue was not present during any other quarter during the class period. Thus, it cannot support an ongoing disclosure controls and procedures issue. As a result, Plaintiffs' repeated allegations that Tarell and Rysavy falsely certified Gaia's disclosure controls and procedures throughout the class period, based on the single quarter subscriber count issue, are baseless. Second, the allegedly defective severance agreements do not equate to a disclosure controls and procedures issue. The severance agreements as written could potentially dissuade an employee from whistleblowing to the government (because they could be prevented from obtaining any financial incentive). However, nothing about those agreements prevented an employee from raising potential issues with management, and that is exactly what the whistleblower did here. Accordingly, Plaintiffs' repeated allegations that Tarell and Rysavy falsely certified Gaia's disclosure controls and procedures, based on the severance agreements, are groundless. At bottom, Plaintiffs' false certification allegations are derived out of whole cloth and cannot support a fraud claim here. Indeed, Plaintiffs still fail to address the well-established law holding "[c]onclusory allegations that a company made false or misleading statements that its controls were effective because a later-revealed instance of impropriety indicates otherwise — absent specific allegations about how or why those controls were ineffective — do not state a claim

8

for securities fraud." *Arora v. HDFC Bank Ltd.*, 2023 WL 3179533, at *6 (E.D.N.Y. May 1, 2023) (collecting cases).

Finally, the Complaint fails to allege a single fact regarding the individual Defendants' purported knowledge regarding the alleged control weaknesses in rendering their certifications false or misleading or that the Defendants knew that the failure to reveal such a weakness or deficiency would likely mislead investors. *Weinstein v. McClendon*, 757 F.3d 1110, 1113 (10th Cir. 2014). For all of these reasons, Plaintiffs' Complaint fails to state a claim based on internal controls.

> **b)** *Plaintiffs' Allegation that Gaia Failed to Disclose That Its Subscriber Count Included Certain Subscribers Who Had Been Offered a Free Trial Period Is Not a Material False or Misleading Statement.*

Plaintiffs continue to argue that the subscriber count for a single quarter is material because of the slight increase in stock price following Gaia's announcement that it had 562,000 subscribers. However, Plaintiffs fail to address the significant additional disclosures that were made at the same time that provide likely bases for the stock increase.[4] Plaintiffs fail to explain how the inclusion of 15,000 non-paying subscribers in its 562,000-subscriber count, as opposed to all of the other information, "would have in the eyes of a reasonable investor, significantly altered the total mix of information available." *Crutchfield v. Match Grp., Inc.*, 529 F. Supp. 3d 570, 592 (N.D. Tex. 2021) (holding that plaintiff did not sufficiently explain how omitted facts regarding the number of paid subscriptions "would have, in the eyes of a reasonable investor, significantly altered the total mix of information available); *In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 852 (N.D. Tex. 2005) (improper counting of subscribers was immaterial as a matter of law); *In re*

---

[4] For example, that (i) it increased its monthly subscription price by 20%, (ii) its revenues increased 36% to $12.5M, and (iii) Gaia's cost to acquire subscribers decreased significantly from 109% to 68%. (Compl. ¶ 54.)

9

*AT&T/DirecTV Now Sec. Litig.*, 2020 WL 4909718, at *11 (S.D.N.Y. Aug. 18, 2020) (holding that Plaintiffs' allegations regarding misleading subscriber numbers were not material).[5]

Moreover, *Indiana Public Retirement System v. Pluralsight*, does not support Plaintiffs' materiality argument. 45 F.4th 1236, 1250 (10th Cir. 2022). *See* Dkt. 46 at 18-19. In that case, the court found defendant's statement that the company had "about 250" quota-bearing sales representatives was material when it only had 200. *Id.* In other words, the defendant overestimated by 25%. Here, Defendants' reporting of an additional 15,000 subscribers only amounts to 2% of the 562,000 total subscribers. This is simply not material.

### c) *Plaintiffs Fail to Address Gaia's Remaining Arguments.*

As noted in Gaia's Motion, (1) Gaia had no duty to disclose the SEC investigation and this alleged omission is not actionable, (2) representations regarding the timing of Gaia's free trial period are not false and do not provide a basis for a fraud claim, and (3) Plaintiffs fail to state a claim under Section 20(a). (Dkt. 45 at 13-15, 22.) Plaintiffs fail to respond to these arguments and thus concede that these events do not sufficiently allege an actionable fraud claim and that Plaintiffs' failure to allege a primary securities violation dooms their control person liability claim.

---

[5] Plaintiffs' attempt to distinguish the foregoing cases are futile. In fact, Plaintiffs' argument on *Crutchfield* underscores the lack of materiality regarding the number of paid subscribers. In that case, the defendant failed to disclose that its subscriber count included fraudulent users, which resulted in a growth in revenue stemming from an increase in subscribers. However, the plaintiffs failed to allege how counting such users would affect defendant's financial figures and the degree to which defendants knew of the fraudulent users. *Crutchfield*, 529 F. Supp. 3d at 592. Therefore, Plaintiffs failed to establish materiality. Here too, Plaintiffs fail to allege how inclusion of the unpaid subscribers would affect Defendants' financial figures (if at all) or the degree to which Defendants knew of the unpaid subscribers in releasing the subscriber count. Similarly, in *In re AT&T/DirecTV Now Sec. Litig.*, the court held that the complaint did not plausibly allege that the fraudulent subscriber practices were material because there were not widespread or systematic. Here too, Plaintiffs affirmatively allege that the subscriber count issue was limited to a single quarter. In *In re Alamosa*, the court observed that the fictitious subscribers were immaterial as a matter of law when viewed in the context of total number of subscribers added for the year/quarter (1%). Here, the 15,000 unpaid subscribers represent only 2% of the 562,000 subscribers reported. This is simply not material.

### 3. Plaintiffs Fail to Adequately Plead Loss Causation.

Plaintiffs continue to rely on third-party opinion articles and the SEC Order in support of the loss causation element of their claim. (Dkt. 46 at 19-22.) However, neither theory is sufficient, and Plaintiffs fail to adequately allege facts supporting the loss causation element of their claim.

First, Plaintiffs argue that third-party opinions can qualify as corrective disclosures because "*Meyer v. Greene* is not binding on this Court." (Dkt. 46 at 22.) Plaintiffs are wrong and fail to cite any case law refuting the well-established principle that *opinion* articles based on public information cannot qualify as corrective disclosures. *See* Dkt. 45 at 20-21. In support of this argument, Plaintiffs rely on *Turner Ins. Agency, Inc. v. Farmland Partners Inc.*, 2019 WL 2521834, at *2 (D. Colo. June 18, 2019). However, *Turner* does not save Plaintiffs' claims. In that case, the third-party disclosure offered more than *opinion* and instead provided a corrective disclosure of *fact* that was new to the public (defendant issued loans to *related* parties, not third-parties). *Id.* In this case, the third-party articles reflect nothing more than the authors' opinions and/or analyses based on publicly available information and fail to reveal any new *factual* information correcting Defendants' misstatements or hidden information.[6] Moreover, none of these articles disclose information that correlates to the alleged false statements in this matter.

---

[6] First, Plaintiffs refer to paragraph 37 of the Complaint. (Dkt. 46 at 19.) But this 12/17/18 article merely reflects the author's opinion that Gaia's subscriber growth targets "for which no date is given" is likely unachievable. (Compl. ¶ 37.) It does not disclose hidden information or correct representations made by Gaia regarding subscriber counts. In fact, it was published *before* the 1Q19 subscriber miscount (and transition to new software resulting in the same) providing the basis for Plaintiffs' claims. Second, Plaintiffs refer to paragraphs 64-65. (Dkt. 46 at 19-20.) Again, this 9/23/19 article is not a corrective disclosure regarding the 1Q19 subscriber count but instead analyzes publicly-available information and opines that Gaia's "subscriber growth is likely to continue to slow." (Compl. ¶ 65.) Similarly, the 12/18/19 article does not disclose that Gaia's 1Q19 subscriber count included unpaid subscribers but instead observed that customers had trouble cancelling their subscription. (*Id.* ¶ 72.) Finally, Plaintiffs argue that February 2021 articles referring to Rysavy and Tarell as "domineering and controlling" somehow reflect a corrective disclosure regarding Gaia's retaliation against the whistleblower. (Dkt. 46 at 20.) This type of

Second, Plaintiffs' argument that the SEC Order reflects a corrective disclosure of the 3Q22 10Q fails. Plaintiffs argue that the 3Q22 10Q was incomplete because it did not disclose the extended time that Gaia prevented whistleblowing or that the whistleblower's termination was connected to overcounting its subscribers. (Dkt. 46 at 20-21.) With respect to the former, Plaintiffs fail to establish any connection between the length of time Gaia used the severance agreement language and the claims asserted in this case such that this information would qualify as a material corrective disclosure. In addition, Plaintiffs' Complaint allegations directly contradict the latter argument. *See* Compl. ¶ 131 ("On November 7, 2022, the Whistleblower's allegations regarding the Company falsifying its subscriber numbers were publicly confirmed.") To the extent the SEC Order contained additional detail, this information does not qualify as a material corrective disclosure; information regarding the subscriber miscount and related termination of the whistleblower were public as of 2Q22. Therefore, Plaintiffs fail to adequately plead loss causation.

## III.   CONCLUSION

This Complaint does not articulate a valid securities fraud claim. Gaia, a Colorado company, should not be required to bear the costs of litigation only to have this matter dismissed at class certification or summary judgment. For the reasons stated above, Defendants respectfully request that the Court enter an Order dismissing Plaintiffs' Complaint with prejudice.[7]

---

subjective, general description of personal characteristics does not reflect a corrective disclosure of fact regarding purported retaliation against an employee.

[7] Plaintiffs have already had the opportunity to amend their complaint once after Defendants raised the same deficiencies addressed here, and further amendment would be futile. Tellingly, Plaintiffs do not argue that amendment would be proper or provide any explanation of what additional evidence they would plead or how such additional evidence would cure the deficiencies. *McNamara v. Pre-Paid Legal Servs., Inc.*, 189 F. App'x 702, 718 (10th Cir. 2006); *Torrez v. Edwards*, 107 P.3d 1110, 1114 (Colo. App. 2004). Because Plaintiffs have already had the opportunity to amend their allegations, dismissal should be with prejudice and without leave to amend. *Torrez*, 107 P.3d at 1114.

DATED this 10th day of January, 2024.

Respectfully submitted,

/s/ *Thomas Krysa*
Thomas Krysa
Kelsey C. Boehm
Stephanie Adamo
Foley & Lardner LLP
1400 16th Street, Suite 200
Denver, Colorado 80202
Phone: 720.437.2013
Fax: 720.437.2200
tkrysa@foley.com
kboehm@foley.com
sadamo@foley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January, 2024 I electronically filed the foregoing **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record for all parties.

*s/ Heather Kunkel*