IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 22-cv-3267-GPG-STV

DANA ARMBRUSTER, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

GAIA, INC., JIRKA RYSAVY, and PAUL TARELL,

    Defendants.

## ORDER

Before the Court is Defendants' Motion to Dismiss (D. 45). The Court GRANTS in part and DENIES in part the motion for the following reasons.

### I.  FACTS

Plaintiff brings a private security class action based on events that have already resulted in a settlement with the United States Securities and Exchange Commission (SEC).[1] Defendant Gaia, Inc. (Gaia) produces and sells subscriptions to streaming content, which consists of videos on yoga and meditation, among other topics. Defendant Jirka Rysavy founded the company and, during the relevant period, was its Chief Executive Officer (CEO) and Chairman. Defendant Paul Tarell was the Chief Financial Officer (CFO) over the same period.

---

[1] The Court draws the operative facts from Plaintiffs' Second Amended Class Action Complaint for Violations of the Federal Securities Laws (Amended Complaint) (D. 39) unless otherwise indicated.

In Q3 2017, Gaia reported that it had a paying subscriber count of 311,000 on September 30, 2017, up from 180,000 one year prior. Gaia attached certifications under the Sarbanes-Oxley Act of 2002 (SOX) to its quarterly report, which stated:

> Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, conducted an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures, as defined in Rule 13a-15(e) and Rule 15d-15(e) promulgated under the Securities Exchange Act of 1934. Based upon its evaluation as of September 30, 2017, our management has concluded that those disclosure controls and procedures are effective.

(D. 39 at ¶ 25). Over the next five years, Gaia filed certifications containing essentially the same statement. Over the same period, Gaia included language in twenty-three employee severance agreements that required employees to waive their rights to receive monetary incentives that are intended to encourage individuals to disclose possible securities law violations to the SEC (D. 31-3 at 3). This is illegal. *See* Implementation of the Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934," Release No. 34-64545, at p. 197 (Aug. 12, 2011).

On an earnings call on March 4, 2019, Rysavy discussed how Gaia calculated paying subscribers stating, in part, that "[h]istorically, we provided for a 15-day grace period and included all subscribers with card related payment issues in our member count at period end" (D. 39 at ¶ 42). On the same call, Tarell stated that Gaia expect to "report around 560,000 subscribers for Q1" (*id*. at ¶ 43). Gaia's stock price went down.

During Q1 2019, Gaia transitioned to a new billing system. It did not go well. Tarrell, who was responsible for the transition, suggested that Gaia offer a free month of access to around 20,000 subscribers who had had their credit cards declined on the last renewal attempt and invite them to update their payment information in the new system. Gaia went ahead with this plan. Of

the customers, approximately 4,500 had pre-paid through the end of the month, 500 reactivated their accounts, and 15,000 did not pay or update their payment information within the month.

On April 29, 2019, Gaia issued a press release announcing it had increased to 562,000 paying subscribers on March 31, 2019, from 418,200 a year before.  The 2019 figure included all of the approximately 20,000 subscribers with billing issues as paying subscribers, including the 15,000 subscribers offered the free month that had not paid or updated their payment information.  Gaia also reported a 36% increase in revenues, due in part to a subscription price increase.  Gaia held an earnings call the same day where Rysavy and Tarell repeated these assertions.  Tarrell also stated that the numbers reflected "exclusion of subscribers for whom we were unable to successfully charge on our last renewal due to their credit cards becoming invalid" and that it was because of the new billing system that "we were able to find the classification of active subscribers to exclude subscribers that are at payment declines status" (D. 39 at ¶ 55).  Gaia's stock price went up.

In June 2019, Gaia issued 484,832 shares of Class A common stock as part of the consideration to acquire a complimentary streaming platform and its intellectual property (D. 31-3 at 5).

Starting in August 2019, a whistleblower raised concerns with Gaia's senior management about Gaia overstating the number of paying subscribers for the first quarter of 2019.  Gaia's management inquired into the issue, decided the numbers were correct, and informed the whistleblower.  On March 16, 2020, the whistleblower filed a complaint with the SEC.  Gaia thereafter fired the whistleblower for cause in retaliation.

Plaintiff quotes from several articles criticizing Gaia that were meant for investors. One article, posted on *Seeking Alpha* December 18, 2019, stated, in part "we see evidence of widespread difficulty in subscribers being able to cancel their accounts, potentially indicating that subscription figures are inflated" (D. 39 at ¶ 37). The article indicated that reviews in online forums showed a "significant number of complaints regarding GAIA's cancellation system and billing" (*id.*).

On November 7, 2022, Gaia filed a quarterly report disclosing an SEC investigation and contemplated settlement stating, in part:

> In June 2020, Gaia received a request for voluntary production of documents in an investigation by the staff of the Denver Regional Office (the "Staff") of the U.S. Securities and Exchange Commission (the "SEC"). Since that time, Gaia has responded to the initial voluntary requests and subsequent subpoenas issued by the Staff. In September 2022, Gaia and Gaia's Chief Financial Officer ("CFO") reached an agreement in principle with the Staff on a framework for a complete resolution of the investigation. The agreement in principle contemplates that Gaia would consent, without admitting or denying any findings, to the entry of an administrative order: (1) finding that Gaia (a) misstated in its April 29, 2019 earnings release and earnings call the number of paying subscribers for the period ending March 31, 2019, a quarter during which Gaia extended a free month of service to certain subscribers in the midst of a transition to a new enterprise-wide data system and (b) failed to comply with SEC whistleblower protection requirements with respect to the termination of one employee and the language used in severance agreements for other employees; and (2) requiring Gaia to pay a total civil monetary penalty of $2,000 over a one-year period for these violations. At the same time, the CFO would consent, without admitting or denying any findings, to the entry of an administrative order: (1) finding that the CFO caused Gaia's misstatements in the April 29, 2019 earnings release and earnings call that is described above; and (2) requiring the CFO to pay a civil monetary penalty of $50. The contemplated settlement with Gaia and the CFO involve violations that require only negligence rather than intentional conduct. There can be no assurance that the contemplated settlement will be finalized and

> approved. Based on Gaia's agreement in principle with the Staff, however, Gaia has accrued a liability in the amount of $2,000. This liability is included in Accounts payable, accrued and other liabilities on the accompanying condensed consolidated balance sheets and as a separate line in the condensed consolidated statements of operations.

(D. 39 at ¶ 131).

On May 23, 2023, the SEC issued an order (SEC Order) (D. 31-3) reflecting the contemplated settlement.[2] Shortly thereafter, Rysavy and Tarell left Gaia.

Plaintiff brings two claims. In Count I of his Amended Complaint, Plaintiff asserts violations of Rule 10b-5, 17 C.F.R. § 240.10b–5(b), against all defendants. *See also* 15 U.S.C. § 78j(b). In Count II, Plaintiff alleges violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(b), by the individual defendants based on the primary violations in Count I.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*,

---

[2] As reflected in the SEC Order and quarterly report, the fines were actually $2,000,000 and $50,000, respectively, but the monetary values in the quarterly report are given in thousands of dollars (D. 31-3, 45-8 at 20). *See* Fed. R. Evid. 201. Plaintiff does not allege that this is a misrepresentation and, of course, the Court is not considering it as one.

478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

Though courts view allegations favorably to plaintiffs at the motion to dismiss stage, federal law creates a heavy burden on claimants alleging securities fraud. *See In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012) ("A plaintiff suing under Section 10(b) [of the Exchange Act] bears a heavy burden at the pleading stage."). The Private Securities Litigation Reform Act of 1995 (PSLRA) imposes "specific and more stringent pleading requirements on complaints alleging securities fraud under Section 10(b)." *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1139 (D. Colo. 2011). With respect to claims under the Exchange Act based on a material misleading statement or omission, the PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is

6

formed." 15 U.S.C. § 78u–4(b)(1). To determine whether a misleading statement or omission is alleged, courts evaluate whether the facts alleged, "taken as a whole," . . . support a reasonable belief that the defendant's statements identified by the plaintiff were false or misleading." *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1099 (10th Cir. 2003), *as amended on denial of reh'g* (Aug. 29, 2003). In applying this standard, the Tenth Circuit has directed courts to evaluate:

> (1) the level of detail provided by the facts stated in a complaint; (2) the number of facts provided; (3) the coherence and plausibility of the facts when considered together; (4) whether the source of the plaintiff's knowledge about a stated fact is disclosed; (5) the reliability of the sources from which the facts were obtained; and (6) any other indicia of how strongly the facts support the conclusion that a reasonable person would believe that the defendant's statements were misleading.

*Id*. (citation omitted). After considering these enumerated factors and "measuring the nature of the facts alleged against these indicia, [if] a reasonable person would believe that the defendant's statements were false or misleading, the plaintiff has sufficiently pled with particularity facts supporting his belief in the misleading nature of the defendant's statements." *Id*.

A plaintiff must also "state with particularity facts giving rise to a "*strong*" inference that the defendants acted with scienter. *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1216 (10th Cir. 2023). "An inference of scienter is considered 'strong' only if proof of the allegations would lead a reasonable factfinder to determine that an inference of fraudulent intent or recklessness is at least as compelling as an innocent inference." *Id*. "Conduct is considered reckless only if the defendants (1) acted in 'an extreme departure from the standards of ordinary care' and (2) presented 'a danger of misleading buyers or sellers' that was [ ] known to the defendants or [ ] so obvious that the defendants must have been

aware of the danger." *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1237 (10th Cir. 2016) (quoting *In re Level 3*, 667 F.3d at 1343 n.12).

## III.  ANALYSIS

Rule 10b–5(b) makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b).  To plead a claim for violations of Section 10(b), a plaintiff must establish "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Ave. Capital Mgmt. II, L.P. v. Schaden*, 131 F.Supp.3d 1118 (D. Colo. 2015) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460-61 (2013)).

Defendants attack plaintiff's allegations in Count I, brought under Rule 10b–5(b), at three elements: (1) material misrepresentation or omission, (2) scienter, and (6) loss causation.  Defendants also argue that, because Plaintiff does not show a primary violation, he cannot show control person liability under Section 20(a) of the Exchange Act for Count II.  The Court addresses these arguments in turn.

### A.  Plaintiff Has Alleged One Group of Material Misrepresentations.

Plaintiff alleges four groups of statements by Defendants as material misrepresentations or omissions: (1) failure to disclose that Gaia's subscriber count for the first quarter of 2019 included subscribers who had been offered a free trial period; (2) failure to disclose weaknesses in Gaia's internal controls; (3) failure to disclose an SEC investigation and eventual settlement; and (4)

failure to disclose the timing of Gaia's free trial periods.  Plaintiff does not defend the fourth category of statements in his Response (D. 46 at 10), and the Court finds it has forfeited the argument that such statements and omissions were material misrepresentations.  The Court addresses the remaining categories.

Defendants do not dispute that the inflated paying subscriber figure was a misrepresentation[3] and instead argue that it was not material.  They assert that paying subscribers is not a generally accepted accounting principles figure (non-GAAP), not a financial metric, and there is no uniform standard for its calculation (D. 45 at 13).  Defendants then argue that, even though the statements resulted in a stock price increase, the subscriber numbers did not "significantly alter[] the total mix of information available" to an investor (*id*. at 14 (internal quotation marks omitted)).  The Court respectfully disagrees.

While paying subscribers may not be a standardized financial metric, Defendants made various statements about how they calculated that number, emphasizing its importance.  It was important enough to investors that Defendants not only explained how they calculated it in press releases and on earnings calls but also set out goals for the company in terms of paying subscribers on such calls.  Indeed, Plaintiff's allegations include several excerpts from articles targeted at investors that discuss paying subscriber count as though it is a vital metric for streaming services (D. 39 at ¶¶ 37, 64, 72-73, 100).  Defendants set out an expectation that they would hit a certain goal for paying subscribers that quarter and stated their first quarter 2019 numbers with respect to that goal, emphasizing its importance.  Indeed, without the added 15,000 subscribers, Gaia would

---

[3] For this reason and the SEC Order, the Court simply refers to it as Defendants' misrepresentation hereafter, rather than an alleged misrepresentation.

not have hit its expected goal. These facts sufficiently establish that Gaia's statements regarding its paying subscriber counts were important to investors, i.e., would significantly alter the mix of available information, and that a misrepresentation regarding whether it has met paying subscriber expectations would affect investing decisions. *See Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997) ("A statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell stock. . . . [U]nless the statement significantly altered the total mix of information available, it will not be considered material." (internal quotation marks omitted)). Both individual defendants made representations regarding the number of paying subscribers and did so on behalf of Gaia. Defendants can point to no facts or authority that undercut the importance of paying subscribers to steaming services. The only case that they cite dealing with subscriber disclosures, *In re AT&T/DirecTV Now Sec. Litig.*, 480 F.Supp.3d 507 (S.D.N.Y. 2020), is not persuasive because it deals with creation of a small number of free subscriptions to juice salesmen's numbers, rather than with thousands of paying subscribers. *Id*. at 519–21. The Court finds that Plaintiff has pled a material misrepresentation regarding the paid subscriber numbers in Q1 2019 for each Defendant.[4]

       Plaintiff's remaining allegations do not fare as well. Plaintiff argues that the statements about the internal controls and failure to report the whistleblowing investigation are misleading for various reasons, but he does not explain why the statements are material (D. 46 at 9–10, 16–19). There is nothing in the Amended Complaint suggesting that the SOX disclosures, which only state what management "investigat[ed]" and "concluded," are false or would be of any importance

---

[4] Although not binding in the present litigation, it was these representations that the SEC Order acknowledged as material misrepresentations (D. 31-3 at 4–5).

to an investor in making an investment decision (D. 39 at ¶ 25).  *See Grossman*, 120 F.3d at 1119.  Plaintiff's arguments that Defendants should have made disclosures about the whistleblower investigation, on which Gaia remained completely silent until announcing the contemplated settlement,[5] are foreclosed by recent Supreme Court precedent.  After briefing was completed on the instant motion, the Supreme Court addressed whether a "pure omission" is actionable Rule 10b-5(b).  *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 263 (2024).  "A pure omission occurs when a speaker says nothing, in circumstances that do not give any particular meaning to that silence."  *Id*.[6]  The unanimous Court concluded that "Rule 10b–5(b) does not proscribe pure omissions."  *Id*.  Plaintiff's Count I is dismissed to the extent it relies on anything other than Defendants misrepresentations regarding the paid subscriber numbers in Q1 2019.

### B. Plaintiff Has Sufficiently Alleged Scienter for Tarell but not Rysavy.

Defendants argue that none of the "allegations establish[] a strong inference that Gaia, Rysavy, or Tarrell had a mental state embracing intent to deceive, manipulate, or defraud" (D. 45 at 20).  Citing *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103 (10th Cir. 2015), Defendants argue that the "reporting irregularity" of the inflated paying subscriber count does not substantiate show an intent to deceive and that the, instead, it is equally plausible that the inflated number was merely the result of confusion caused by problems with the new billing system (D. 45 at 21–23).  The Court agrees in part.

---

[5] Plaintiff alleges some very minor omissions from the disclosure of the contemplated settlement (D. 39 at ¶ 132), but, even if they could be found misleading, none of these alleged omissions are material or even close to being material.

[6] The allegations do not show that Gaia had any duty to disclose an SEC Investigation such that silence on the issue could be taken to mean that no such investigation was occurring.  Instead, Defendants cite persuasive authority indicating that a company has no duty to disclose ongoing SEC investigations.  *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) ("But a government investigation, without more, does not trigger a generalized duty to disclose." (collecting cases)).

Plaintiff's allegations regarding Rysavy do not support a strong inference that he was acting with deceptive intent as opposed to innocently or, at most, negligently. The Complaint indicates that Rysavy was aware of the problems with the new billing system and likely aware of the offer of a free month to thousands of customers. That Rysavy, as CEO, might have had a business incentive to inflate the numbers does not tip the scales in favor of an inference that he was acting with the requisite scienter. *City of Philadelphia v. Fleming Co., Inc.*, 264 F.3d 1245, 1269 (10th Cir. 2001) (finding generic allegations a shared business motive related to company financial success do not support scienter). Likewise, the allegations that Rysavy had access to Gaia's confidential information, the contents of which is not alleged, does not suggest specific relevant knowledge. There are no allegations suggesting that he was specifically aware or should have known that thousands of those customers were included in the numbers of paid subscribers that he read off on the earnings call. *Id*. at 1265 ("Other than reciting the contents of a few internal memoranda generally referencing inflated prices and customer complaints, Plaintiffs have alleged no particular facts on which this court could conclude that Defendants 'must' have known").

On the other hand, it is difficult to believe that Tarell was not aware that the number was inflated with non-paying subscribers. The alleged facts indicate that Tarell, as CFO, was responsible for the new billing system, implementing the free month plan, and calculating the number of paid subscribers. The facts suggest he had access to and reviewed the raw numbers both for paying subscribers and for the results of his plan to offer a free month to those encountering problems with the new billing system. *Compare In re Gold*, 776 F.3d at 1114 (rejecting the inference of scienter where reliance was established by reliability over a long period). Further, in these circumstances it is reasonable to conclude that he must have been aware of the

12

danger that the non-paying subscribers would be incorrectly counted.  *See id*. at 1115 ("It is certainly plausible that a prudent executive would want to investigate and confirm a claimed discrepancy before disclosing it publicly.").  Indeed, as the person responsible for implementing the new billing system, he would have been strongly incentivized to make sure its failings were not the reason Gaia did not meet its expectations.  "Motive can be a relevant consideration in making the scienter determination, and personal financial gain may weigh heavily in favor of a scienter inference."  *In re Level 3*, 667 F.3d at 1345 (cleaned up).  Accordingly, Count I is dismissed without prejudice with respect to Rysavy but will be allowed to proceed against Tarell and Gaia.

### C. Plaintiff has Sufficiently Alleged the Misrepresentations Caused Losses.

To support a Rule 10b-5 claim, a plaintiff must show "a causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). "The securities laws are not meant to 'provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause.'" *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1137 (10th Cir. 2009) (quoting *Dura Pharms.*, 544 U.S. at 345).  "Alleging that price has been inflated as a result of a misrepresentation is not enough—even if the plaintiff has suffered a loss—unless the plaintiff can identify a 'causal connection' between the loss and the misrepresentation." *Id*. (quoting *Dura Pharms.*, 544 U.S. at 347).

Defendants argue that Plaintiff cannot show causation because, when the SEC investigation into the misrepresentations was revealed, Gaia's stock price went up (D. 45 at 23).  They assert that this is the only corrective disclosure made that is alleged by Plaintiff.  *See Lentell v. Merrill*

13

*Lynch & Co., Inc.*, 396 F.3d 161, 173–74 (2d Cir. 2005).  Defendants assert that the five alleged instances of stock price decline after articles were published critical of Gaia's prospects cannot be corrective disclosures that show causation (D. 47 at 14–15).  *See Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013).

Plaintiff asserts that, as reflected by the articles, the negative information Gaia has sought to conceal "slowly leaked into the market through partial corrective disclosures and materialized, causing Gaia stock to fall" (D. 46 at 19).  He notes that these articles revealed problems related to Defendants' misrepresentations by, for example in December 2019, questioning how Gaia counted subscribers "through highlighting instances of customers being unable to cancel their subscriptions" (*id*. at 20).  Plaintiff further notes that, when the SEC Order ultimately issued, the stock price did decline (*id*. at 21).

In these circumstances, Defendants argument that the November 2022 disclosure of the SEC investigation was the one and only corrective disclosure is not viable.  Because Gaia's misrepresentation of paying subscribers related to its business fundamentals at a specific point rather than, for example, its revenues for a fixed period, Gaia's subsequent honest disclosures of the same metric would each in some sense be corrective and leak information into the market.  That is, as soon as Gaia next presented correct paying subscriber numbers, and each time it did so shortly thereafter, the prior inflated numbers would cause the company look worse because they would indicate, for example, slowing subscriber growth (if the number rose) or worse than actual losses of subscribers (if the number fell), and perhaps call into question the prior disclosures.  Plaintiff's arguments and allegations, such as analysts catching on to its undisclosed problems with

subscriptions under its new billing system, are consistent with this and would link drops in stock price to the misrepresentations.  The Court will not dismiss Plaintiff's claims on this basis.

### D.  Plaintiff's Section 20(b) Claim Will Also Proceed Against Tarell.

Defendants seek dismissal of Plaintiff's Count II Section 20(a) claim solely on the basis that he has not alleged a primary violation under securities law (D. 45 at 26).  Because the Court dismissed Count I against Rysavy, it will also dismiss Count II against him.  *See Smallen v. The W. Union Co.*, 950 F.3d 1297, 1315 (10th Cir. 2020) ("Control-person claims under Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(b), are predicated on some underlying primary violation of the securities laws.").

### IV.  CONCLUSION

Accordingly, is Defendants' Motion to Dismiss (D. 45) is GRANTED in part and DENIED in part.  It is FURTHER ORDERED that Count I is dismissed against Rysavy and insofar as it alleges material misstatements other than in relation to Gaia's paid subscriber numbers in Q1 2019.  Plaintiff's Count I remains against Gaia and Tarell insofar as it alleges material misstatements in relation to Gaia's paid subscriber numbers in Q1 2019.  Plaintiff's Count II remains against Tarell insofar as it alleges material misstatements in relation to Gaia's paid subscriber numbers in Q1 2019 as a primary violation.

DATED August 22, 2024.

BY THE COURT:

Gordon P. Gallagher
United States District Judge